**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James E. CAREY, Defendant–Appellee.**

**No. 89–1826.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1989.

Decided Jan. 12, 1990.

James M. Warden, Asst. U.S. Atty., Roger Heaton, Asst. Atty. Gen., Indianapolis, Ind., for plaintiff-appellant.

Duge Butler, Jr., Butler, Brown & Blythe, Indianapolis, Ind., J.J. Paul, III, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

This case involves an appeal by the government of the district court's downward departure from the Federal Sentencing Guideline's applicable sentencing range. The defendant, James E. Carey, pled guilty to the execution of a scheme and artifice to defraud a bank in violation of 18 U.S.C. § 1344. The presentencing report calculated the defendant's sentencing range for custody as 12 to 18 months imprisonment under the Sentencing Reform Act. While accepting this calculation of the applicable sentencing range as accurate, the district court departed downward from the applicable range. The court did not give reasons at the sentencing hearing for its departure but following the filing of this appeal, entered a memorandum *nunc pro tunc* stating that the downward departure was based on the cumulative effect of the following factors: (1) the age of the defendant, (2) the physical condition of the defendant, (3) the total dollar loss from the offense overstated its seriousness because a plan of restitution had been undertaken prior to indictment, and (4) the offense was a single act of aberrant behavior. The government appeals claiming that the district court impermissibly relied on these four factors in departing downward. Because we find that the district court's stated reasons for departing were, in part, improper and otherwise not sufficiently articulated, we vacate the sentence and remand for resentencing in conformity with this opinion and the Guidelines.

## I. BACKGROUND

The defendant, James E. Carey, was president of North Side Trucking Company.

The company maintained checking accounts at the Indiana National Bank and at Bank One. Both banks were located in Indianapolis. For at least fifteen months, beginning in 1987 and continuing into early 1988, the defendant engaged in a check-kiting scheme in which the two checking accounts were constantly overdrawn in ever-increasing amounts. Each workday throughout the fifteen-month period the defendant concealed the overdrafts from the banks by having the company's bookkeeper prepare checks drawn on each of the two accounts in amounts sufficient to cover the shortage in the other account. The defendant signed each check and, on most occasions, personally deposited the checks at the respective banks. The scheme came to an end when the Indiana National Bank discovered the insufficiency of funds to cover three checks written on the company's account. At that time, the insufficiency totaled $219,000.

On October 27, 1988, Carey was indicted for defrauding a bank in violation of 18 U.S.C. § 1344.[1] The indictment alleged that the defendant executed a scheme and artifice to defraud Indiana National Bank by causing to be prepared and causing to be presented for deposit into an account at Bank One checks drawn on an account at Indiana National Bank in the aggregate amount of $219,000, knowing that there were insufficient funds in the Indiana National Bank account for the checks to be honored. On January 12, 1989, the defendant entered into a plea agreement in which he agreed to plead guilty as charged in the indictment. The agreement stated that the government would make the nature and extent of the defendant's cooperation known to the court at sentencing and would recommend an executed sentence within the range provided by the Sentencing Reform Act (the "Act"). The agreement further stated that the defendant

---

1. 18 U.S.C. § 1344 states in pertinent part:
   (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a federally chartered or insured financial institution ...

   (2) ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

could request and argue for any sentence he deemed appropriate. The district court accepted the defendant's guilty plea.[2]

The pre-trial services agency prepared a presentence report which calculated that under the Act the applicable sentencing range for custody was 12 to 18 months of imprisonment.[3] The report did not recommend a departure from the Guidelines. The report also stated the following relevant facts regarding the defendant's age, physical condition and employment: The defendant was born on February 4, 1926. He underwent surgery once in September 1979 and twice in February 1980 to reduce a brain tumor on a pituitary nerve. The defendant takes medication daily as treatment for pituitary problems. He was also operated on in January of 1988, having been diagnosed as possibly having chest cancer. No cancer was discovered during that operation. He does not smoke and has never used illegal drugs. He has served as the pastor of a church since 1982.

At sentencing, the district court acknowledged that the pretrial service agency's calculation of the appropriate sentencing range at 12 to 18 months was accurate. The court, however, departed downward from the applicable range and imposed a sentence of one month imprisonment, two years supervised release (including the first thirty days in a community treatment center), full restitution, 200 hours of community service, reimbursement of the costs of confinement, and a $50 special assessment. The court gave no reasons for departing from the range at sentencing.

On April 17, 1989, the government filed a notice of appeal pursuant to 18 U.S.C. § 3742(b). On April 18, 1989, the district court filed a memorandum *nunc pro tunc* as to the sentencing hearing explaining that the cumulative effect of four factors led it to depart downward from the applicable guideline range. As stated above, these four factors were: (1) the age of the defendant, (2) the physical condition of the defendant, (3) the total dollar loss resulting from the offense overstated its seriousness because a plan of restitution had been undertaken prior to indictment, and (4) the offense was a single act of aberrant behav-

---

**2.** As a preliminary matter, the defendant argues that the government is estopped from appealing the sentence imposed by the district court because doing so would deny him the benefit of his plea agreement. In essence, the defendant contends that the right to challenge an inappropriate departure from the Guidelines is waived by the plea agreement. We believe that there is no language in the agreement that can be properly construed as such a waiver. The plea agreement expressly provided that "[t]here are no other understandings or representations in regard to the plea agreement or any other related proceedings." Therefore, the plea agreement does not bar the government from challenging an inappropriate sentence such as it is doing here. We take no position as to whether the government can agree not to appeal an illegally imposed sentence.

**3.** The presentence report calculated the defendant's guideline sentencing range for custody as follows:

|  | *Offense Level* |
|---|---|
| Base Offense Level: | 6 |
| Specific Offense Characteristics: | +7 |

| | *Offense Level* |
|---|---|
| (Increase by 7 levels because total dollar loss from offense was between $200,000 and $500,000) | |
| Adjustment for role in offense: | +2 |
| (Increase by 2 levels because defendant engaged in more than minimal planning) | |
| Victim related adjustment: | NONE |
| Obstruction of justice adjustment: | NONE |
| Acceptance of responsibility adjustment: | −2 |
| (Decrease by 2 levels because defendant admits guilt) | — |
| Total Offense Level | 13 |
| Criminal history: | Category 1 |

(None)

The parties do not dispute the accuracy of this calculation.

ior. The court expressly stated that none of these factors taken alone persuaded it to depart downward but that the aggregate effect of the four factors warranted the departure.

## II. ANALYSIS

The United States Sentencing Commission Guidelines, enacted pursuant to the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.,* (Supp. IV 1986), and 28 U.S.C. §§ 991–98 (Supp. IV 1988), require a district court to impose a sentence of the kind and within the range established by the Sentencing Commission for the applicable category of offense and defendant unless the court finds an aggravating or mitigating circumstance of a kind or to a degree not adequately considered by the Commission in formulating the Guidelines. 18 U.S.C. § 3553(b) (Supp. 1989). *See also United States v. Jordan,* 890 F.2d 968, 970 (7th Cir.1989); *United States v. Perez,* 871 F.2d 45, 47–48 (6th Cir.1989). In determining whether a circumstance was adequately considered by the Commission, a court can consider only the Guidelines themselves, along with its policy statements and the official commentary of the Commission. *Id.* The Guidelines list a number of factors that may never be considered as either aggravating or mitigating circumstances—race, sex, national origin, creed, religion, and socioeconomic status. Other factors, such as age, physical condition, education, and family and community ties are generally irrelevant except in an extraordinary case. §§ 5H1.1–10. The sentencing court must state the reasons for a departure from the applicable sentencing range, and the sentence imposed must be reasonable in light of the articulated reasons. 18 U.S.C. § 3742(e)(2).

■ In this appeal, the government contends that the district court's reasons for departing are either not relevant to a decision to depart or are not supported by the record. The scope of our review is set forth in 18 U.S.C. § 3742(e). We review a district court's departure from the Guideline's sentencing range to determine wheth-

er it was reasonable in light of the factors dictated by the Guidelines and the district court's explanations for its departure. 18 U.S.C. § 3742(e); *United States v. Miller,* 874 F.2d 466, 471 (7th Cir.1989); *United States v. Jordan,* 890 F.2d 968, 970–71 (7th Cir.1989). " 'Reasonableness' implies that a sentencing judge must provide articulable reasons, of a type contemplated by the Act and the Guidelines, and based on a sufficiently sound factual foundation to justify a departure from the guidelines." *Miller,* 874 F.2d at 471. Where we find that a departure is unreasonable, we must vacate a sentence and remand the case for further proceedings. 18 U.S.C. § 3742(f)(2).

In Carey's case, a review of each of the four factors that the district court relied on for its departure leads us to the inevitable conclusion that the departure was unreasonable because the court's application of the Guidelines to the facts as presented was clearly erroneous. Accordingly, we must vacate Carey's sentence and remand for resentencing. We turn to an analysis of each of the four factors, with an eye both toward providing guidance to the district court to enable it to properly resentence this defendant, and to future sentencing courts seeking to depart from the Guidelines.

### a. Restitution

■ We begin by addressing the district court's reliance on the defendant's voluntary payment of restitution prior to indictment. As of the time of sentencing, Carey had paid all but $20,000 of the $220,000 owed to the bank as a result of the check-kiting scheme. The district court believed that this payment of restitution was relevant to its decision to depart based on a statement in the Guidelines that a departure may be warranted where "[i]n a few instances, the total dollar loss that results from the offense may overstate its seriousness. Such situations typically occur when a misrepresentation is of limited materiality or is not the sole cause of the loss." Commentary to § 2F1.1, ¶ 10. The district court apparently believed that because restitution in full would soon be accomplished,

"there will be no loss to any financial institution" and thus departure under § 2F1.1 was warranted.

Giving due deference to the district court's application of the Guidelines to the facts of this case as mandated by 18 U.S.C. § 3742(e), we find that the district court's reliance on restitution for a downward departure under § 2F1.1 was clearly erroneous. The Commission made it clear that instances where the total dollar loss that results from an offense would overstate its seriousness would be rare, Commentary to § 2F1.1, ¶ 9, and would typically occur either when the offense involved a misrepresentation of limited materiality or when the misrepresentation was not the sole cause of the loss. *Id.* at ¶ 10. The Commentary to § 2F1.1 implies that a downward departure is warranted only in the rare situation where the defendant should not be held responsible for the entire loss due to extrinsic reasons beyond his control. In Carey's case, it is uncontested that the entire loss was due directly to his actions. Moreover, the record before us does not support a finding, and the district court did not make one, that either of the two typical conditions were present. Carey's actions were the sole cause of the loss to the bank and were essential to the check-kiting scheme. The dollar loss here does not overstate the seriousness of the offense. The defendant individually orchestrated and carried out the fraud on the bank involving deposits on almost every business day over a fifteen-month period. *See* examples cited in Commentary to § 2F1.1 ¶ 10.

As stated earlier, the Guidelines permit a departure from the applicable sentencing range where the court finds "an aggravating or mitigating circumstance of the kind or to a degree not adequately considered by the Commission in formulating the Guidelines." 18 U.S.C. § 3553(b) (Supp.1989). Here, the court relied on restitution for a departure even though restitution was a circumstance adequately considered by the Commission in formulating the Guidelines. In § 3E1.1, the Guidelines permit a district court to make a two-level

reduction to the level of the offense if a defendant demonstrates acceptance of responsibility. The Commentary to this section *expressly* states that such a reduction may be given when the defendant engages in the "voluntary payment of restitution prior to the adjudication of guilt." Commentary to § 3E1.1 ¶ 1. The Commentary, therefore, demonstrates that the Commission adequately considered restitution as a mitigating circumstance when formulating the Guidelines. Accordingly, a departure based on restitution is unreasonable. In this case, the district court already considered the defendant's restitution when it awarded a two-level reduction for his acceptance of responsibility.

The Guidelines do permit, however, the district court some flexibility in departing from a sentencing range even when circumstances have been adequately considered by the Commission in formulating the Guidelines. The Commentary to § 5K2.0 states that:

a court may depart from the guidelines even though the reason for the departure is listed elsewhere in the guidelines (*e.g.,* as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline factor attached to that factor is inadequate. Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guidelines is warranted only if the factor is present to a degree substantially in excess of that which is ordinarily involved in the offense of conviction.

*See also Jordan,* at 973. A district court's determinations regarding adjustment for such factors as acceptance of responsibility are judgments made altogether separately from the decision regarding an upward or downward departure. Under § 5K2.0, the Guidelines allow a court to increase the two-level reduction given the defendant for his acceptance of responsibility if the court determines that "unusual circumstances" exist and the circumstance is "present to a degree substantially in excess of that which is ordinarily involved." In Carey's

case, the court did not make either of these requisite findings to warrant an added reduction based on his payment of restitution and therefore, the departure was unreasonable. On remand, the court is free to make such a finding to warrant a reduction in the defendant's offense level.

### b. Age and Physical Condition

■ In the district court's sentencing memorandum, the court stated that "while age and physical condition are not normally in and of themselves reasons to depart downward, the Court believes that the combination of the defendant's age (62) and the fact that he has had several serious operations as a result of a brain tumor are significant enough to allow the Court some flexibility in a downward departure." The government argues that this conclusion is improper as a matter of law and is unsupported by the court's articulated reasons. We agree.

Section 5H1.1 of the Guidelines states that "[a]ge is not ordinarily relevant in determining whether a sentence should be outside the guidelines." § 5H1.1. The Guidelines limit the consideration of age to a decision whether to depart only where "the offender is elderly *and* infirm and where a form of punishment (*e.g.*, home confinement) might be equally efficient as and less costly than incarceration." *Id.* Additionally, section 5H1.4 states that the physical condition of the defendant is not ordinarily relevant to a decision to depart but that "an extraordinary physical impairment" may be reason to impose a sentence other than incarceration. *Id.* In Carey's case, the district court's reliance on his age and physical condition for the departure from the applicable sentencing range was unreasonable because the court failed to make the necessary findings required by § 5H1.1 and § 5H1.4. To base a departure on § 5H1.1, the court must make a finding that Carey was elderly and infirm and that an alternative form of confinement would be equally efficient and less costly than incarceration. Similarly, the court must make a finding that Carey suffers from an extraordinary physical impairment to warrant departure under § 5H1.4. In this

case, the court did not make any such findings and instead relied on its summary conclusion that Carey's age and physical condition "allow the Court some flexibility in a downward departure." Without more particularized findings and analysis we cannot conclude that the district court's reliance on Carey's age and physical condition in departing from the applicable sentencing range was reasonable. Again, on remand, the district court is free to make this finding if the facts support it.

### c. A Single Act of Aberrant Behavior

■ The Guidelines state that "[t]he Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." Ch. 1, Pt. A, Introduction 4(d). Accordingly, the Guidelines permit a sentencing court to depart from the applicable range where it finds such behavior since the circumstance has not been adequately considered by the Commission. The district court made just such a finding in this case. We believe, however, that the court's finding that Carey's actions constituted a single act of aberrant behavior to warrant departure under Ch. 1, Pt. A, Introduction 4(d) is clearly erroneous.

■ The district court stated that it was "guided by the guideline's discussion of 'a first offender' as reflected in the last paragraph of [Ch. 1, Pt. A, Introduction 4(d) ]" in finding that Carey's actions constituted a single act of aberrant behavior. The district court apparently believed that because the check-kiting scheme was the defendant's first criminal offense and was generally inconsistent with his otherwise exemplary life and high standing in the community, departure from the Guidelines was warranted as his behavior constituted a single act of aberrant behavior. A finding that the defendant's actions constituted such behavior to warrant a departure must be, however, based on more than the defendant's high standing in the community and his lack of a prior criminal record. The Guidelines expressly bar consideration of a defendant's socioeconomic status in sen-

tencing, and first offender status, taken alone, is insufficient to support a departure.[4]

While the Guidelines provide no guidance as to what constitutes a single act of aberrant behavior, we believe that it must be more than merely something "out of character" or the defendant's first offense. Carey's otherwise exemplary life before becoming involved in this check-kiting scheme does not render his actions, on their own, a single act of aberrant behavior to support a departure. Instead, we believe that there must be some element of abnormal or exceptional behavior. Carey's actions were apparently the result of extensive planning and were spread out over a fifteen-month period. A single act of aberrant behavior, however, generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable.

We have been able to find only one reported decision in which a defendant sought a downward departure, arguing that his behavior was a single act of aberrant behavior. This case, *United States v. Russell*, 870 F.2d 18 (1st Cir.1989), provides an excellent example of the type of behavior that a court may properly consider to be a single act of aberrant behavior (even though the court declined to do so). The defendant was a driver of a Wells Fargo armored truck who had no previous criminal record. A bank had mistakenly handed Russell's partner, the truck's messenger, an extra money bag containing $80,000. The men initially yielded to temptation and decided to keep the money. A week later, however, they admitted what they had done. Russell returned all of the money that he had kept, and cooperated fully in the investigation of the crime. He argued that the district court should impose a sen-

tence below the guideline minimum because his conduct constituted a single act of aberrant behavior, no planning was involved, and he cooperated fully with the government and returned all the money. The district court refused to depart downward, although it did impose a sentence at the bottom of the applicable sentencing range. *Id.* at 20. The First Circuit affirmed the district court's decision.

The facts in *Russell* come closer to being a single act of aberrant behavior than those of the case at bar. Russell's actions were unplanned and spontaneous; he was apparently overcome by the sudden intoxication of unexpected and immediate wealth. He committed only one act and returned the money soon after committing the offense. In contrast, Carey's offense was planned and involved hundreds of overt acts over a long period of time. Carey's behavior, standing alone, surely does not warrant a downward departure from the Guidelines under the guise that it was a single act of aberrant behavior.

### d. Other Issues

█ Finally, the Act mandates that the district court state the reasons for imposing a particular sentence in open court at the time of sentencing. If the sentence is outside the applicable guideline range, the court must state the specific reasons for departing from that range at the time of sentencing. 18 U.S.C. § 3553(c). The stated purposes of this open court requirement are: (1) to facilitate the evaluation of the reasonableness of the sentence so that the parties can decide whether to appeal, and (2) to permit the public to understand why the defendant received the sentence that he did. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess., *reprinted at* 1984 U.S.Code, Cong. & Admin.News 3262–63.

In the case at bar, the district court did not satisfy the open court requirement, and offered no explanation at the time of sentencing for its departure from the appropriate sentencing range. This inaction nulli-

---

**4.** We note that the Commission adequately considered the defendant's first offender status in formulating the Guidelines. Under the reasoning of the Guidelines, the court can consider first offender status in its determination of a single act of aberrant behavior only where it finds "unusual circumstances" and the factor is "present to a degree substantially in excess to that which is ordinarily involved." No such finding was made here.

fies the purposes of the open court requirement because one party is faced with appealing a sentence before a court has stated its reasons, thus necessarily involving the waste of judicial resources and the circumscribing of congressional directive. While fully recognizing the additional burdens placed upon a sentencing judge, we must require district courts to adhere to the requirements of the Act in order for it to meet its intended purposes.

We share in the district court's apparent concern over any harshness the Guidelines create in the case at bar. We can further understand a trial judge's attempt to ameliorate the severity dictated by the new determinate sentencing scheme. It is uncontested that up until the commission of the offense the defendant had lived a meritorious life and had been a model citizen and an asset to the community. His crime did not involve personal gain but was done to help his company through tough times. The court apparently believed that the defendant "had suffered enough" for his crime. Nevertheless, the Guidelines seek to end the disparity in sentencing, *see* 28 U.S.C. § 991(b)(1)(B), and in doing so, mandate that departures be the exception and occur only when truly justified. *See* Guidelines Ch. 1, Pt. A, Introduction 4(b), at 1.6–1.7. On the record before us, the Guidelines do not permit us to find Carey's case to be an exceptional one justifying a departure. At sentencing, the government recommended that the defendant receive an executed sentence at the low end of the applicable sentencing range. We take no position as to the appropriate sentence within the applicable range but conclude that, without further findings by the district court, this case is not one for departure from the Guidelines.

### III.

For the reasons discussed above, the sentence imposed is VACATED and we remand for resentencing in accordance with this opinion.