**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edwin MORALES, Defendant–Appellant.**

**No. 91–50513.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 8, 1992 *.

Decided April 17, 1992.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed.   R.App.P. 34(a) and Ninth Circuit Rule 34–4.

John Lanahan, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Carolyn L. Oliver, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: BOOCHEVER, NORRIS, and NOONAN, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Defendant Edwin Morales was convicted of possession of 2.27 kilograms of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and sentenced to 131 months in prison. The defendant challenges (1) the district court's refusal to suppress the evidence seized at an immigration checkpoint; (2) the court's refusal to grant him a two-point reduction in his sentence for acceptance of responsibility; and (3) the court's refusal to depart downward on the ground that defendant's conduct was a single instance of "aberrant behavior." We affirm the conviction, but vacate the sentence and remand for resentencing.

I

On October 13, 1990, defendant was stopped at the San Clemente immigration checkpoint as he was driving north on Interstate Highway 5 near San Diego. Agent Briones, the immigration officer, noticed that defendant was sweating profusely, and that his car smelled of what Briones thought was fresh paint. Briones asked defendant to state his citizenship; defendant responded, with a heavy Latin accent, "I'm a United States citizen," and indicated that he was born in New York. Based on defendant's accent and nervousness, Briones referred him to the secondary inspection area.

At the secondary inspection area, Briones inquired more about defendant's citizenship. In response, defendant produced a California driver's license and a North San Diego County Transit Authority employee card. Finding these documents invalid for immigration purposes, Briones asked defendant for permission to search his car. Briones testified that he was looking for proof of citizenship or for other immigration violations. Defendant responded, "Sure, go ahead." Briones asked to search the trunk; defendant consented. No violations were found in the trunk.

Briones noticed that the defendant was still sweating and fidgeting with his hands. Based on these observations, Briones asked defendant if he could inspect the front area of the vehicle to find some proof of the defendant's citizenship. Again, defendant responded, "Sure, go ahead." During this search, Briones observed a white plastic bag protruding from under the driver's seat. When Briones asked defendant whom the bag belonged to, he said he did not know. Upon being asked again, he responded it was his. In response to

Briones' request, defendant gave Briones permission to look in the bag.

The bag contained a mixture which Agent Briones recognized as methamphetamine. Defendant was placed under arrest.

## II

■ It is undisputed that the initial stop at the permanent checkpoint was permissible under the Fourth Amendment. *See United States v. Martinez–Fuertes*, 428 U.S. 543, 558, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976). Defendant argues, however, that the referral to the secondary inspection violated the Fourth Amendment because it was not within the scope of the immigration search and was not justified by articulable suspicion. We review de novo the legal issues involved in a trial court's ruling on a motion to suppress. *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In *United States v. Taylor*, 934 F.2d 218 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992), we considered the constitutional problems posed by a similar checkpoint search. In *Taylor*, the immigration agent referred a vehicle to secondary inspection "because he thought that the nervous behavior of occupants could mean that they were concealing undocumented aliens or perhaps narcotics." *Id.* at 219. In this case, Briones relied on two additional factors—defendant's heavy accent and the fact that his car was freshly painted—in deciding to refer defendant to the secondary inspection. The referral was clearly permissible under *Taylor*.[1]

■ Once at the secondary inspection point, each search of defendant's vehicle was taken pursuant to express consent from the defendant. Lawful searches may be undertaken pursuant to either a finding or probable cause or with the consent of the defendant. *Taylor*, 934 F.2d at 220;

*Schneckloth v. Bustamente*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973).

Relying on *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), defendant argues that his consent was "tainted." In *Royer*, the Supreme Court said that evidence must be suppressed if it was obtained pursuant to consent while defendant was being illegally detained. The Court reasoned that, because the seizure in question exceeded the scope of an investigative stop, the defendant was illegally detained and his consent therefore tainted. *Id.* at 508, 103 S.Ct. at 1329–30. In this case, by contrast, the investigative stop to which defendant was subjected was within the bounds appropriate for an immigration stop. Accordingly, because defendant "voluntarily consented to the search ... while he was justifiably being detained ... the products of the search are admissible against him." *Id.* at 502, 103 S.Ct. at 1326. We therefore hold that the district court properly admitted the evidence seized at the immigration checkpoints.

## III

■ Defendant contends he was improperly denied a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Defendant argues that the truthful answers he gave to the court's questioning on the factual basis of his guilty plea constitute acceptance of responsibility. Defendant also argues that the denial of the reduction is inconsistent with the district court's finding that he was a minor participant entitled to a two-point minor participation reduction.

■ Under Application Note 5 to U.S.S.G. § 3E1.1, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference." Under Application Note 3, a defen-

---

**1.** Defendant's reliance on *United States v. Hernandez–Alvarado*, 891 F.2d 1414 (9th Cir.1989), and *United States v. Salinas*, 940 F.2d 392 (9th Cir.1991), is misplaced. Both cases involved

roving stop and searches. We have required a greater degree of articulable suspicion to justify a stop. *See Taylor*, 934 F.2d at 221.

dant who pleads guilty is not automatically entitled to a two-level reduction.

■ In denying the reduction, the district court relied on the presentence report which indicated that the defendant denied knowledge of the methamphetamine. In view of this particular finding of fact, we see no reason to question the district court's determination which is entitled to great deference. Nor do we think that the finding of minor participation is inconsistent with the denial of the acceptance of responsibility reduction. One can be a minor participant in a crime, yet deny responsibility for the crime.

## IV

■ At sentencing, defendant argued that the district court should depart below the presumptively applicable guidelines range on the ground that the offense in this case is a single act of aberrant behavior. The district court stated that it could not depart and gave two reasons. First, the district court thought that it did not have the legal authority to depart on the basis of aberrant behavior. Second, the court asserted that, even if aberrant behavior is a permissible basis for departure, it could not find anything within the facts of this case to warrant a departure. We review de novo the district court's ruling that a particular circumstance does not constitute a permissible basis for departure and for clear error its finding that the mitigating circumstance does not exist in a particular case. See United States v. Lira–Barraza, 941 F.2d 745, 746 (9th Cir.1991). However, we do not have jurisdiction to review a district court's discretionary decision not to depart from the Sentencing Guidelines. See United States v. Morales, 898 F.2d 99, 103 (9th Cir.1990) ("[A] district court's discretionary decision not to depart from the Guidelines is not subject to review on appeal.").

Construing the district court's statements as a refusal to exercise its discretion to depart, the government argues that we are precluded by Morales from reviewing the district court's ruling. We reject the government's interpretation of the district court's statements. The district court clearly rested its decision on legal grounds.

Indeed, the court stated, "I'm going to give you something to appeal on." Because the district court's statements indicate a willingness to depart, we must review its legal determination that the Guidelines prevent departure. See United States v. Belden, 957 F.2d 671, 676 (9th Cir.1992).

■ We must first decide whether the district court was correct in ruling that it did not have the discretion to depart down on the basis of aberrant behavior. We hold that the district court erred in thinking that "aberrant behavior" is not a permissible basis for departure. Although we have already held that a departure below Criminal History Category I is inappropriate simply because the defendant is first time offender, see United States v. Borrayo, 898 F.2d 91, 94 (9th Cir.1989), we have also held that "the Guidelines recognize that a first offense may constitute a single act of truly aberrant behavior justifying a downward departure." United States v. Dickey, 924 F.2d 836, 838 (9th Cir.), — U.S. —, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991) (citing Guidelines Manual, Ch. 1, Part A, Introduction, para. 4(d) ("The Commission has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures")); see also United States v. Russell, 870 F.2d 18, 20 (1st Cir.1989). In Dickey we reasoned, "It is clear under the Guidelines that 'aberrant behavior' and 'first offense' are not synonymous." Id. Read together, Dickey and Borrayo stand for the proposition that a district court may depart below Criminal History Category I in instances where the court concludes that the offense of conviction is a single aberrant act of criminal behavior. See United States v. Takai, 941 F.2d 738, 742 (9th Cir.1991). Thus, the departure might not be available to a first time offender who has been convicted of several unrelated offenses or who has been found to have been a regular participant in an on-going criminal enterprise. See, e.g., United States v. Carey, 895 F.2d 318, 325 (7th Cir.1990). However, the departure is available to a first time offender who has been convicted of one aberrant criminal act. See Takai, 941 F.2d at 743; Russell, 870 F.2d at 20–21.

Reviewing the district court's alternate justification that there are no facts to support a finding of aberrant behavior in this case, we conclude that the district court committed clear error. Just as Russell, *see id.*, Morales had no criminal history and was convicted of one isolated criminal act. There is no evidence whatsoever in the record that Morales was a regular participant in an on-going criminal enterprise or that he has been convicted of several unrelated illegal acts. Because the *absence* of evidence of continued criminality constitutes a finding of aberrancy, the district court erred in thinking that additional findings were necessary to give it the authority to depart down.

In light of the foregoing, we AFFIRM the conviction, but VACATE the sentence and REMAND so that the district court may consider whether it wishes to exercise its discretion to depart down on the basis of aberrant behavior.