UNITED STATES of America, Plaintiff,

v.

Christopher Robert McCARTHY, Defendant.

Crim. No. 92–CR–417.

United States District Court, D. Colorado.

Sept. 24, 1993.

Kyra E. Jenner and David M. Conner, Asst. U.S. Attys., Denver, CO, for plaintiff.

Michael S. Axt, Denver, CO, for defendant.

## MEMORANDUM OF SENTENCING HEARING AND REPORT OF STATEMENT OF REASONS

NOTTINGHAM, District Judge.

Counsel for the Government, defense counsel, and defendant were present for the sentencing hearing at 8:30 o'clock a.m. on Friday, August 27, 1993. The hearing was continued at 2:30 o'clock p.m. on September 15, 1993. Based on that hearing, the report concerning presentence investigation of defendant, and all other materials submitted to the court, I enter the following findings, conclusions, and orders:

1. Pursuant to rule 32(c)(3) of the Federal Rules of Criminal Procedure, the defense attorney and defendant were timely provided a copy of the report of the presentence investigation, excluding only the final recommendation as to sentence. No other information was withheld. Defendant and counsel have had the opportunity to read and discuss the presentence investigation report.

2. Defendant and counsel were afforded the opportunity to speak, to present information in mitigation (or, in the case of the Government, aggravation) of the sentence, to comment on the report, to introduce testimony or other information relating to any alleged inaccuracy in the report, and to comment on the probation officer's determination and on other matters relating to the appropriate sentence.

## RESOLUTION OF FACTUAL DISPUTES AND DISPUTES CONCERNING APPLICATION OF GUIDELINES

3. Neither the Government nor the defendant has challenged any fact recited in the presentence investigation report. Therefore, the factual statements in the report are adopted without objection.

## GUIDELINE CALCULATIONS AND FINDINGS

4. Based upon the materials in the presentence investigation report, I find the appropriate guideline calculations to be as follows:

*Count One (Aggravated Bank Robbery)*

| | | |
|---|---|---|
| (a) | Base Offense Level | 20 |
| (b) | Adjustment, Financial Institution | +2 |
| (c) | **Adjusted Offense Level** | 22 |
| (d) | Adjustment for Acceptance of Responsibility | -3 |
| (e) | **Total Offense Level** | 19 |
| (f) | Criminal History Category | I |
| (g) | Imprisonment Range | 30 to 37 months |
| (h) | Supervised Release Range | three to five years |
| (i) | Fine Range | $6,000 to $60,000 |

*Count Two (Use of Firearm in Connection With Robbery)*

Under U.S.S.G. § 2K2.4 (Nov.1992), the term of imprisonment is that required by statute—a five-year mandatory minimum, consecutive to the term imposed on the first count.

5. Restitution in the amount of $6,547.91 is owed to the Colorado National Bank, at the location specified in the presentence report.

6. I find that imposition of a fine would likely interfere with defendant's ability to make restitution. Therefore, no fine is imposed.

## DEPARTURE

### A. Possible Ground for Departure: a Single Act of Aberrant Behavior

7. I must first decide if defendant has identified a proper ground for departure. In making this decision, I recognize that the United States Sentencing Commission (the "Commission") intended for the courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. U.S.S.G. ch. 1, pt. A, intro. 4(b). In particular, a court may depart from the guideline range if it finds that "there exists a[ ] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into account by the sentencing commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp. 1993); U.S.S.G. § 5K2.0.

8. The guidelines forbid departures based on race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, physical condition (including drug or alcohol abuse), personal financial difficulties, and economic pressures upon a trade or business. U.S.S.G. §§ 5H1.10, 5H1.12, 5H1.4, 5K2.12. *Cf. Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1117, 117 L.Ed.2d 341 (1992). With these specific exceptions, the Commission did not limit the types of circumstances, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for departure in an unusual case. *See* U.S.S.G. § 5K2.0 ("[T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines [e.g., as a specific offense characteristic or other adjustment], if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.").

9. In deciding whether to depart downward from the guidelines, the sentencing court must make certain legal and factual determinations. As a matter of law, the court must (1) identify the mitigating circumstance and (2) determine whether the circumstance was adequately considered by the Commission. As a question of fact, the court decides (1) if this circumstance actually exists, (2) if it should result in a departure, and (3) the degree of the departure. *See United States v. Takai,* 941 F.2d 738, 742 (9th Cir. 1991); *United States v. Peña,* 930 F.2d 1486, 1494 (10th Cir.1991). A defendant who advances a mitigating factor bears the burden

of proof to establish that factor by a preponderance of the evidence. *United States v. Urreqo–Linares,* 879 F.2d 1234, 1239 (4th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989).

10. "[A] single act of aberrant behavior" has been recognized as a mitigating circumstance not taken into account by the guidelines. *See, e.g., Peña,* 930 F.2d at 1495; *Takai,* 941 F.2d at 743; *United States v. Fairless,* 975 F.2d 664, 668 (9th Cir.1992); *United States v. Dickey,* 924 F.2d 836 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991); *United States v. Russell,* 870 F.2d 18, 20 (1st Cir.1989). In commenting on the availability of probation under the guidelines, the Commission describes the offense levels for which probation is expressly permitted and then explicitly states that it "has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. ch. 1, pt. A, intro. 4(d). Thus, as a matter of law, I find that "a single act of aberrant behavior" is a mitigating circumstance not adequately considered by the Commission.

## B. What is a "single act of aberrant behavior"?

11. In order to make the required factual determinations, I must first decide what constitutes "a single act of aberrant behavior." Although the guidelines do not define "a single act of aberrant behavior," two lines of authority have attempted to define this term. The Ninth Circuit defines the term along an "aberrant behavior spectrum." The Seventh Circuit (and a number of decisions relying on Seventh Circuit authority) hold that "a single act of aberrant behavior" must be "spontaneous" and "thoughtless."

### 1. The Ninth Circuit Approach

12. The Ninth Circuit has developed an "aberrant behavior spectrum" analysis for determining whether a given case constitutes "a single act of aberrant behavior." A case such as *United States v. Russell* is placed at one end of the spectrum. *Russell* concerned a driver of an armored truck who, as a result of a bank error, had a bag containing $80,000 in cash literally dumped into his lap. In a "spontaneous" act, the driver temporarily yielded to the temptation to keep the money but shortly thereafter confessed his wrongdoing and returned his share of the money. *Russell,* 870 F.2d at 20–21. The Ninth Circuit treats *Russell* as a clear instance of "a single act of aberrant behavior."

13. According to the Ninth Circuit, a case such as *United States v. Carey,* 895 F.2d 318 (7th Cir.1990), falls at the other end of the spectrum. In *Carey,* defendant engaged in a check-kiting scheme over a period of at least fifteen months. The Seventh Circuit held that "the defendant's actions could not be characterized as aberrant behavior because they consisted of overt acts taking place over a prolonged period of time." *Id.* at 325. Even the Ninth Circuit acknowledges that *Carey* would not qualify as "a single act of aberrant behavior."

14. Under the Ninth Circuit's analysis, *Russell* and *Carey* represent the terminal points on its "aberrant behavior spectrum." *See, e.g., Dickey,* 924 F.2d at 838. *See also United States v. Andruska,* 964 F.2d 640 (7th Cir.1992) (recognizing the Ninth Circuit's "aberrant behavior spectrum"). The other cases which the Ninth Circuit has addressed fall somewhere along this spectrum. For example, in *United States v. Takai,* defendants were convicted of an eight-day long conspiracy to bribe an Immigration and Naturalization Service official. The Ninth Circuit upheld the district court's finding of aberrant behavior based on the following factors: defendants' lack of pecuniary gain, the conduct of the government agent in influencing the defendants to commit the crime, and the charitable deeds performed by one of the defendants. *Takai,* 941 F.2d at 742. *See also Dickey,* 924 F.2d at 837 (defendant convicted of printing counterfeit $20 bills).

15. The Ninth Circuit further extended the scope of the "aberrant behavior spectrum" in *United States v. Morales,* 961 F.2d 1428 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993). In *Morales,* defendant was convicted of possession with intent to distribute methamphetamine. In facts similar to those the Tenth

Circuit addressed in *United States v. Peña*, the Ninth Circuit held that it was clear error for the district court to have found these factors insufficient to constitute "aberrant behavior." The Ninth Circuit noted that defendant had no criminal history and there was no evidence that she was a regular participant in an on-going criminal enterprise or that she had been convicted of several unrelated illegal acts. "Because the absence of evidence of continued criminality constitutes a finding of aberrance, the district court erred in thinking additional findings were necessary to give it authority to depart down." *Morales*, 961 F.2d at 1431. *See also United States v. Baker*, 804 F.Supp. 19 (N.D.Cal.1992) (granting downward departure based on the fact that defendant had never been associated with illegal drug use or trafficking).

### 2. The Seventh Circuit Approach

16. The Seventh Circuit has adopted a more restrictive definition of "a single act of aberrant behavior." As indicated earlier, *Carey* concerned a check-kiting scheme which extended over a period of fifteen months. The district court had granted a downward departure based on the "cumulative effect" of the following factors: (1) the age of the defendant; (2) the physical condition of the defendant; (3) the total dollar loss from the offense overstated its seriousness because a plan of restitution had been undertaken prior to indictment; and (4) the offense was "a single act of aberrant behavior." *Carey*, 895 F.2d at 318. In rejecting the district court's holding, the Seventh Circuit advanced the following as a definition of "a single act of aberrant behavior":

> [I]t must be something more than merely something 'out of character' or the defendant's first offense.... [T]here must be some element of abnormal or exceptional behavior.... A single act of aberrant behavior ... generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of

substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable.

*Id.* at 325. Noting that Carey's actions were the result of extensive planning over a fifteen-month period, the Seventh Circuit held that defendant's otherwise exemplary life before becoming involved in the check-kiting scheme did not render his actions "a single act of aberrant behavior." *Id.* at 324.

17. In an opinion authored by Judge Wilkins, who was then chairman of the Commission, the Fourth Circuit expressly disavowed the Ninth Circuit's "aberrant behavior spectrum" and adopted the definition espoused in *Carey*. *United States v. Glick*, 946 F.2d 335, 338 n. * (4th Cir.1991). In *Glick*, defendant was convicted of transportation of stolen property. Although defendant had no previous criminal history, his conduct involved sending five separate letters containing misappropriated confidential information over a period of ten weeks, as well as devising a code to use in communicating through a national trade publication. The Fourth Circuit found that due to the extensive planning, number of actions involved, and length of time over which defendant planned and perpetuated his offense, his actions did not constitute "a single act of aberrant behavior." *Glick*, 946 F.2d at 338. *See also Andruska*, 964 F.2d at 645 (expressly rejecting Ninth Circuit's approach and holding that [1] defendant's continued involvement with fugitive after learning his fugitive status, [2] her efforts to assist fugitive in evading authorities, [3] her refusal to acknowledge her actions were wrongful, and [4] the repeated nature of her actions in no way constituted aberrant behavior); *United States v. Garlich*, 951 F.2d 161 (8th Cir.1991) (finding criminal conduct spanning one year and several transactions not aberrant behavior; defendant's "actions in planning and executing [a] financing scheme over a one-year period were not 'spontaneous and seemingly thoughtless.' ").[1]

---

1. The Tenth Circuit has not directly addressed the question of what constitutes "a single act of aberrant behavior." In *United States v. Peña*, 930 F.2d 1486 (10th Cir.1991), the court upheld the district court's decision to depart downward on the basis of "a single act of aberrant behavior." The Tenth Circuit found that implicit in the district court's findings was the conclusion

### 3. Application of Seventh and Ninth Circuit Approaches to Bank Robbery Cases

18. Both the Ninth Circuit's and Seventh Circuit's approaches have been applied to cases which are similar to the instant case. In *United States v. Fairless*, defendant entered a bank wearing a ski mask and brandishing an unloaded nine-millimeter gun. Defendant ordered everyone but the bank tellers to lie on the floor. He then approached each teller and ordered him or her to put the money in a brown paper bag. Defendant was convicted of bank robbery. He received a downward departure, from offense level twenty-four to level nineteen, based on the finding that the offense was "a single act of aberrant behavior." The district court determined that defendant's behavior was aberrant based on the convergence of the following factors: (1) the robbery was defendant's first criminal offense; (2) he suffered from manic depression; (3) the fact that he committed the robbery with an unloaded gun indicated he was suicidal; (4) defendant was under extreme pressure from a combination of circumstances, including the fact that he had recently lost his job; and (5) the court had received numerous letters from Fairless's family stating that the robbery was "a complete shock" and out of character. *Fairless*, 975 F.2d at 667. The court sentenced him to thirty months imprisonment with a three-year period of supervised release. Applying the "aberrant behavior spectrum" analysis, the Ninth Circuit affirmed the district court's departure. The Ninth Circuit reasoned that Fairless's actions were more spontaneous than those in *Takai* and *Dickey;* they required less planning, occurred within a shorter time frame, and consisted of more literally a "single act" than did the acts in either of those cases. *Id.* at 667.

19. In *United States v. Williams*, 974 F.2d 25 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1320, 122 L.Ed.2d 706 (1993), the Fifth Circuit applied the Seventh Circuit's definition of "a single act of aberrant behavior" to a bank robbery case. Williams had entered the bank and presented the teller with two demand notes. One read:

Give me all your money in your draw [sic]. Don't be no hero. Because if you do you will see me again. I want 3 sacks of $100.00 bills and all the rest of your money. Put it up on the counter and no tricks and no bums [sic]. Give the note back and close your booth and walk away. Thank you.

The second note, written on a bank withdrawal slip dated two days prior to the robbery, stated, "All of your money ... all of your money" and was signed "John Doe." The teller handed Williams a bag containing approximately $2700 and a dye pack. Shortly after he left the bank, the dye pack exploded, causing him to drop the bag and flee the scene. The Fifth Circuit upheld the district court's determination that Williams' conduct did not constitute a one-time act of aberrant behavior. The Fifth Circuit found that Williams' actions appeared neither spontaneous nor thoughtless, noting that one of the demand notes was dated several days before the robbery. *See also United States v. Ritchey*, 949 F.2d 61 (2nd Cir.1991) (bank robbery case remanded to the district court for clarification as to whether the district court believed it had authority to depart on the ground of "a single act of aberrant behavior").

### 4. Definition of "Single Act of Aberrant Behavior" to be Applied Here

20. I agree with the Government that the Ninth Circuit's definition of "a single act of aberrant behavior" is untenable. Under the Ninth Circuit's analysis, virtually all first time offenses qualify as "aberrant" since they would be departures from previously law-abiding behavior. The only exception to this general rule would be for first time offenders who engage in a string of criminal activity. *See Morales*, 961 F.2d at 1431

---

that defendant's behavior was an aberration from her usual conduct, as reflected by her long-term employment, economic support for her family, and lack of either abuse or prior involvement in the distribution of controlled substances. *Peña*, 930 F.2d at 1495. *Cf. United States v.*

*Bauer*, 995 F.2d 182 (10th Cir.1993) (holding there was no jurisdiction to review district court's discretionary refusal to depart downward on the grounds that defendant's conduct constituted "a single act of aberrant behavior").

("[T]he departure might not be available to a first time offender who has been convicted of several unrelated offenses or who has been found to have been a regular participant in an on-going criminal enterprise."). The expansiveness of the Ninth Circuit's definition of "aberrant" has therefore led all other circuits which have confronted the issue to reject the Ninth Circuit's approach. *See, e.g., United States v. Sheffer,* 896 F.2d 842, 846 (4th Cir.) (defendant's status as a first time offender did not entitle her to adjustment for single act of aberrant behavior), *cert. denied sub nom. Rains v. United States,* 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 82 *cert. denied,* 498 U.S. 968, 111 S.Ct. 432, 112 L.Ed.2d 416 (1990); *Williams,* 974 F.2d at 26 ("Although the guidelines do not define 'aberrant behavior,' we are certain that it requires more than an act which is merely a first offense or 'out of character' for the defendant. Those considerations are taken into account in calculating the defendant's criminal history category."); *Carey,* 895 F.2d 318, 324–25 (7th Cir.1990) (the absence of prior convictions is not enough to show that the act in question was single and aberrant).

21. The Government urges not only that I adopt the Seventh Circuit's definition of "a single act of aberrant behavior," but also that I give the definition a slavishly-literal interpretation which would render an "aberrant behavior" departure unavailable to nearly all defendants. According to the Government, defendant took several planned acts in order to complete the bank robbery: he entered the bank; he displayed a handgun; he demanded money from a teller; and he told everyone to lie on the floor. Thus, concludes the Government, defendant engaged in a calculated series of acts, not in an isolated, "spontaneous," and "thoughtless" single act.

22. The Government's interpretation of the Seventh Circuit's approach is flawed. Every offense, no matter how basic or simple, is composed of a series of acts. Moreover, very few (if any) acts which are considered criminal are truly "spontaneous" or "thoughtless." Even the case of *Russell,* which all the circuits embrace as an example of "spontaneous" and "thoughtless" behavior, required the defendant to commit a series of

*thoughtful* acts. Russell had to discover the money was a product of a bank error, decide to keep the money, calculate his "share of the loot," and remove the money from the armored truck. Strict and literal adherence to the definition of "single act" as "spontaneous" and "thoughtless" would eliminate the availability of the departure.

23. I believe the Seventh Circuit, properly understood, is attempting to focus not upon how many separate acts imaginative minds can discern in a course of conduct, but upon whether that course of conduct reveals substantial advance planning or continued thought or reflection as events unfold. The question would seem to be primarily one of fact, with key considerations being the period of time covered by the conduct in question, the number of separate criminal acts deliberately committed during this period, the extent to which the facts demonstrate the execution of an overall plan, and the extent to which defendant was merely reacting to events (as opposed to controlling, or attempting to control, them).

24. This interpretation of "a single act of aberrant behavior" avoids making the availability of the departure contingent upon the charging decision of the Government. The focus is on the actual acts committed, not on the manner in which the Government chooses to charge the defendant. In this case, the Government elected to charge both bank robbery and use of a dangerous weapon during the commission of a violent crime. The commission of bank robbery was simultaneous with defendant's use of the firearm. Assuming the robbery were considered a single act, it would be irrelevant that the Government charged the same conduct as two separate violations.

### C. Do the facts of this case constitute "aberrant behavior"?

25. For purposes of analyzing whether a departure is justified, I find the following facts. On September 8, 1992, at approximately ten o'clock in the morning, Defendant Christopher R. McCarthy entered the Bank Western (now known as Colorado National Bank) located at 6333 East Colfax Avenue, Denver, Colorado. Defendant ap-

proached teller Alana K. Walker and placed his backpack on the counter. He then displayed the silver Ruger nine-millimeter revolver which had been concealed by the backpack and demanded that Ms. Walker place all the money in the bag. He told the other persons in the bank to lie on the floor. Ms. Walker pulled some bait money from her teller drawer, an action which activated the surveillance cameras. She then took the rest of the money from her drawer and gave it to defendant. Defendant left the bank on foot with the money he had taken.

26. The circumstances of the robbery itself suggest the disorganized and unplanned nature of the crime. Not only did defendant make no effort to disguise his identity, but he also left his wallet at the bank. This wallet contained numerous pieces of identification in the name of Christopher R. McCarthy.

27. Following the robbery, defendant checked into the Ramada Inn near Stapleton Airport and spent the night there. Although the Government initially suggested that defendant surveilled the bank before the robbery and rented the Ramada room as part of a plan to conceal himself before and after the robbery, it appears from the motel records that defendant did not rent the room until after the robbery was done. The room rental, in other words, was simply one of a series of unconnected events, not a part of a preconceived plan. After staying one night at the Ramada, defendant began what would be a forty-day cross-country flight. The flight appears to have been characterized by aimless wandering, not by any deliberate travel plan.

28. On October 18, 1992, defendant turned himself in to authorities in Coos Bay, Oregon. The circumstances of his surrender are somewhat unclear. I am satisfied, however, that he surrendered voluntarily because of remorse over his actions and because he was tired of being on the lam, not because law enforcement authorities were about to apprehend him.

29. Subsequent to his arrest, defendant underwent various psychological evaluations. These evaluations suggest that the bank robbery was "aberrant" behavior for defendant. Dr. Richard Sandor, M.D., who was defendant's treating psychiatrist at Saint John's Hospital and Health Center in Santa Monica, California, concluded: "I am persuaded that [defendant] is sincerely remorseful and that this was an *aberrant* act by a troubled but not anti-social, criminal or otherwise dangerous young man." (Def.'s Sentencing Statement, Ex. B [filed Aug. 6, 1993] [hereinafter "Def.'s Statement"].) Although Dr. Sandor could not diagnose defendant with any type of severe psychiatric disorder, he noted, "[T]he gravity of [defendant's] actions, and the *discordant* relationship of those actions to his previous way of living are striking."

30. The circumstances leading up to the robbery are also pertinent to an evaluation of defendant's behavior. Having been expelled by the University of San Francisco, and having lost his summer job at the university, defendant had decided to join the military. While awaiting orders to report for boot camp, he moved in with a friend. At some point shortly after losing his job, he went camping for a few days. His family was in the habit of taking a gun with them when camping (evidently for protection), and he therefore took his father's gun with him. It was this gun which he still had in his possession several days later when he committed the robbery.

31. In the meantime, defendant returned to his family home in Los Angeles. As he was waiting for his father to return from a Labor Day trip, he received word that a daughter of one of his father's friends had died. This news, together with his own unhappy situation, made him decide to run. Stealing his stepmother's car, he got as far as Las Vegas the first night. He then proceeded east until he ran out of gas somewhere in Utah. Having offered to clean the service station in exchange for some fuel, he thereafter made it to Dillon, Colorado, where he ran out of gas again. He borrowed money to buy more gas and continued on to Denver. He had not slept since leaving California, and he spent the first night in Denver asleep in his car, which was parked at the airport parking structure. He had no money. The next morning, he robbed the bank— using his father's gun, which he still had from the camping trip.

**1412**

32. I am satisfied that the circumstances recited above demonstrate both (1) the aberrational nature of defendant's behavior and (2) the unique circumstances which distinguish this course of events from the more typical bank robbery and thus take this case out of the "heartland" of bank robberies. Aside from a conviction for having made an improper turn onto a freeway in Burbank, California in 1989, this was defendant's first conviction. (Def.'s Statement at 1.) The robbery was thus an aberration from defendant's previously lawful behavior. Furthermore, this robbery, which took place in less than three minutes, was clearly a "spontaneous" and unplanned crime. Defendant decided to rob the bank less half an hour before he actually did so. Once he made this decision, he took no steps to prepare for the robbery in advance. He did not attempt to disguise his identity. In fact, he left his wallet with all his identification in it at the bank. This fact underscores the unplanned and thoughtless manner in which defendant executed this crime. *See United States v. Jagmohan,* 909 F.2d 61, 65 (2nd Cir.1990) (lack of sophistication in completing crime may be proper ground for departure). Finally, unlike the typical bank robber who plans the use of a weapon in executing the robbery, defendant had the weapon with him because of his previous camping trip; the use of the weapon in the robbery did not occur to him until he actually decided to rob the bank that morning. Viewing these facts collectively, I find that defendant's act of robbing the bank was "a single act of aberrant behavior." The robbery was largely unplanned. Defendant did not control, or try to control, events; events controlled him.

### D. Does the "aberrant behavior" here merit a departure from the guidelines?

33. Having determined that the mitigating circumstance exists, the second factual determination which I must make is whether the circumstance justifies a departure. I make this determination in light of the overall goals of sentencing. The factors which the Commission deems relevant when imposing sentences include: the nature and seriousness of the offense; the history and char-

acteristics of the defendant; the need for just punishment; deterrence; protection of the public from further crimes of the defendant; any pertinent policy statements of the Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution. 18 U.S.C.A. § 3553(a) (West 1985 & Supp.1993). *See Peña,* 930 F.2d at 1495; *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993) (citing Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1700, 1730–31 [1992] ). Of these factors, the history and characteristics of defendant and the various aspects of punishment strongly support departure.

34. I turn first to the history and characteristics of defendant, focusing on the events which immediately preceded the robbery. Defendant had been awaiting his father's return to the family home, so that he could tell his father of his expulsion from college. Before he was able to speak with his father, defendant learned that a person with whom he identified had been killed. This news, coupled with defendant's own distressing news, sent defendant into a confused and unstable emotional state. Defendant began driving east from California. He eventually ended up in the parking lot at Stapleton Airport. Having no money and no gas, defendant spent the night in his car on the "C" level of the parking garage. The next morning, defendant decided to rob a bank. Thirty minutes later, he had committed the robbery. These circumstances suggest that defendant was simply in a confused and desperate state when he committed this single act of aberrant behavior.

35. Second, the goals of punishment would be more than adequately served by sentencing defendant to five years of incarceration on the section 924(c)(1) charge and departing downward on the bank robbery charge. Dr. William Hansen, Ph.D., who evaluated and administered various psychological tests to defendant, concluded:

> I see nothing in the information available to me which would lead me to conclude

that he is a danger to others, nor anything to suggest that there is a high probability of future antisocial acts of the nature of his bank robbery action of September 8, 1992. Unless the goal is punishment, I see no reason to think that he (nor society) would gain from extensive incarceration, Mr. McCarthy having already taken significant steps in the direction of appropriate change, treatment and rehabilitation, which are the more desired long term goals following criminal behavior.

Dr. Hansen's conclusion suggests that the goals of general and specific deterrence would not be furthered by incarcerating defendant for an extended period of time. Since defendant's case has not been publicized, the impact of general deterrence is negligible—if it even exists at all. As to the goal of specific deterrence, there is absolutely no indication that this defendant would commit a crime of this nature again. Considering the factors which the Commission has deemed relevant in imposing a sentence, I find that the mitigating circumstance·of "a single act of aberrant behavior" justifies a departure here.

### E. What is the proper degree of departure?

■ 36. The final factual determination I must make concerns the appropriate degree of departure. As indicated earlier, defendant's sentencing range for the armed bank robbery charge is thirty to thirty-seven months. Since the Government elected to charge defendant with violation of section 924(c)(1), I must also impose a consecutive five-year imprisonment sentence. I believe that the proper degree of departure can be discerned by first supposing that the Government had not skewed the guidelines by bringing the section 924(c) charge. Making this supposition, I find that defendant would have received an additional five-level guideline adjustment for brandishing a weapon—raising his total offense level to 24. The resulting guideline range would have been fifty-one to sixty-three months. In other words, for the armed bank robbery offense of which defendant stands convicted, the Commission has determined that this is the rea-

sonable sentencing range—assuming that there were no section 924(c) charge.

37. I believe that the usual sentencing range determined in the previous paragraph may·be used to define a reference point for a reasonable departure. Since I *must* impose a mandatory minimum consecutive sentence on the section 924(c) conviction, a sentence on that count alone falls in the upper part of the guideline range which the Commission has deemed appropriate. .I therefore depart on the first count to offense level eight, which carries a range of zero to six months and would permit a sentence of probation as far as the guidelines are concerned. I nonetheless impose a one-month sentence on this count, since the offense is a class B felony, for which probation is not authorized. *See* 18 U.S.C.A. § 3561(a)(1) (West Supp.1993).

38. The reasons for the sentence, *see* 18 U.S.C.A. § 3553(c) (West 1985), were stated in open court.

### PLEA AGREEMENT

39. The plea agreement in this case, entered into under the authority of Fed. R.Crim.P. 11(e)(1)(B), requires the Government to recommend a sentence at the bottom of the guideline range as to count one. I conclude that the recommended sentence is within the applicable guideline range, even though I have elected not to follow the recommendation. *See* U.S.S.G. § 6B1.2(b). Accordingly, the plea and the plea agreement are accepted.

### IMPOSITION OF SENTENCE

40. The sentence imposed is as follows:

(a) Defendant is committed to the custody of the United States Bureau of Prisons, to be imprisoned for a period of one month on count one. On count two, defendant is committed to the custody of the United States Bureau of Prisons for a period of 60 months, this sentence to be consecutive to the sentence imposed on count one. The court recommends to the Bureau of Prisons that defendant receive credit for four days spent in official detention prior to sentencing. The court further recommends that the Bureau of Prisons desig-

nate FCI, Pleasanton, California, for service of sentence, assuming that this institution is the appropriate level for this offender.

(b) Upon release from his term of imprisonment, defendant will serve a term of three years on supervised release. Within 72 hours of his release from the custody of the Bureau of Prisons, defendant will report in person to the probation office in the district to which he is released. Defendant will observe all "standard" conditions of supervised release set forth at U.S.S.G. § 5B1.4(a), p.s. He will also observe the following special conditions:

i) He will not possess any firearm or destructive device.

ii) He will not illegally possess or use controlled substances.

iii) He will not commit a federal, state, or local crime.

iv) He will pay the restitution obligation imposed in paragraph 40(c).

v) He will participate in a program for testing and treatment of drug abuse, as directed by the probation officer, until he is released from the program by the probation officer. Defendant is to pay the cost of this program.

vi) He will participate in a program for testing and treatment of alcohol abuse, as directed by the probation officer, until he is released from the program by the probation officer. Defendant is to pay the cost of this program.

vii) He will provide the probation officer with all requested financial information.

viii) He will not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless he is in compliance with all periodic payment obligations imposed pursuant to the court's judgment and sentence.

(c) Defendant will pay restitution in the amount of $6,547.91 to Colorado National Bank, either in a lump sum or in installments of $200 per month.

(d) The defendant shall pay a special assessment of $100. 18 U.S.C.A. § 3013 (West 1985). This amount shall be payable immediately.

41. Defendant has been advised of his right to appeal the sentence imposed. If he wishes to appeal, his trial counsel shall assist him in perfecting the appeal. If he cannot pay the cost of an appeal, he may apply to the court for leave to appeal *in forma pauperis*. If defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of defendant.

42. Defendant was ordered to surrender himself voluntarily to the United States Marshal for the District of Colorado at 3:10 o'clock p.m. on September 15, 1993.

43. The clerk shall prepare the judgment required by rule 32(b) of the Federal Rules of Criminal Procedure, in accordance with this Memorandum of Sentencing Hearing and Report of Statement of Reasons. The clerk shall file this Memorandum of Sentencing Hearing and Report of Statement of Reasons. The Probation Department shall attach a copy to the presentence investigation report. The Probation Department shall also forward copies to the United States Sentencing Commission and the United States Bureau of Prisons.