**UNITED STATES, Appellee,**

v.

**Larry C. HAVENER,**
**Defendant, Appellant.**

**No. 89–1484.**

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1990.

Decided June 5, 1990.

**4**

Judith Mizner, Newburyport, Mass., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

This appeal raises a narrow issue about the applicability of a change that the Sentencing Commission recently made in one of its guidelines. The guideline in question governs the sentencing of a "career offender," a person convicted for a third time of an offense involving drugs or violence. *See* United States Sentencing Commission, *Guidelines Manual* [hereinafter U.S.S.G.; all citations are to the latest edition of the Manual (November 1, 1989) unless otherwise noted] § 4B1.1; 28 U.S.C. § 994(h) (mandating that the Commission assure that certain "career" offenders receive a sentence to a term of imprisonment "at or near the maximum term authorized"). The change in question permits a two-level downward adjustment for the offender's "acceptance of responsibility." *See* U.S.S.G. App. C, at C.137 (setting forth Amendment 266 to the Guidelines, effective November 1, 1989). We conclude that the change comes too late to help the appellant, who was sentenced 6 months prior to its effective date. Because we reject his other

arguments as well, we affirm the district court's judgment.

## I.

### *Background*

After the appellant, Larry Havener, pled guilty to drug charges, the district court, on April 28, 1989, sentenced him to a prison term of 18 years (216 months). In doing so, the court applied the Sentencing Guideline for a career offender. *See* U.S.S.G. § 4B1.1 (October 15, 1988). It found the relevant sentencing level, Level 32. It found the relevant Criminal History Category, Category VI. It found, at the relevant intersection of row and column, a guideline sentencing range of 210–262 months. And, it chose a sentence within that range, namely 216 months.

The court rejected Havener's argument that it should subtract two levels from Level 32 in light of Havener's "acceptance of responsibility." It conceded that Havener had indeed accepted responsibility for his crime, but it found that the special "career offender" guideline did not permit that deduction. We have held that the district court's interpretation of that guideline is correct. *United States v. Alves*, 873 F.2d 495, 498 (1st Cir.1989).

Subsequently, on May 17, 1989, the Sentencing Commission promulgated Amendment 266, and sent it to Congress for review. *See* 54 Fed.Reg. 21,348, 21,379 (May 17, 1989); 28 U.S.C. § 994(p) (mandating a period of Congressional review before guideline amendments take effect). The amendment took effect on November 1, 1989. *See* U.S.S.G. App. C, at C.137. Havener argues here that the amendment makes a difference to his sentence.

## II.

### *Retroactive Application of Amendment 266*

■ 1. Havener argues that Amendment 266 applies to his case because it simply "clarifies" the preexisting guideline. The "clarification," in his view, shows that our initial interpretation of the unamended guideline, *see Alves*, 873 F.2d at 498, was incorrect.

We do not accept this argument because we do not believe the amendment simply clarifies the earlier guideline. The original "career offender" guideline instructed the sentencing court to calculate a sentence in the ordinary way, adjusting for "acceptance of responsibility" as appropriate. It then referred the court to a table and told the court to use the table's sentence level if it was higher than the level calculated in the ordinary way. *See* U.S.S.G. § 4B1.1 (October 15, 1988). The guideline thereby quite clearly instructed the court *not* to make a further (acceptance of responsibility) adjustment after using the table. *See Alves,* 873 F.2d at 497–98.

The amendment adds a sentence to the "career offender" guideline. The new sentence tells the court what to do when the court applies the table and *after* the court applies the table. The new sentence says that the court then should determine whether the offender qualifies for an "acceptance of responsibility" adjustment, and, if so, the court should "decrease the offense level by 2 levels." U.S.S.G. § 4B1.1. This new sentence is not clarification; it is change.

The Commission's explanation of Amendment 266's purpose also suggests the Amendment was not intended just to clarify the preexisting guideline. In the past, when the Commission has intended to change a guideline for purposes of clarification, it has normally explained that purpose, by, for example, explicitly mentioning "unclear or otherwise problematic ... interpretations" of the Guidelines that required a clarifying change. *See, e.g.,* 53 Fed.Reg. 15,530 (April 29, 1988) (introducing a prior set of guideline amendments). In the case of Amendment 266, however, it said nothing about lack of clarity. Rather, it said simply that the "purpose of this amendment is to authorize the application of § 3E.1.1 (Acceptance of Responsibility) to the determination of the offense level under this section." 54 Fed.Reg. 21,379 (May 17, 1989); U.S.S.G. App. C, at C.137. In addition, the Commission did not include Amendment 266 on the list of amendments to which it gave retroactive application. *See* U.S.S.G. § 1B1.10(d), p.s. Had the Commission intended merely to clarify, would it not likely have made the clarification retroactive?

■ 2. We have considered a further argument. One principle of statutory interpretation urges an appellate court to assume that a legislature intended a new law to apply to cases on appeal, even if the new law leads to a different outcome. As the Supreme Court has described this principle,

> a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

*Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *see Thorpe v. Housing Authority,* 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969); *New England Power Co. v. United States,* 693 F.2d 239, 244–45 (1st Cir.1982). Does this principle require us to apply Amendment 266 to the case now before us?

■ After considering the parties' supplementary briefs on this point, we have concluded that the principle does not apply in the case before us. For one thing, as a general matter, the "law in effect" canon would seem to govern matters of procedural law, and substantive civil law; it does not ordinarily apply in the context of substantive criminal law. That is because the Constitution's ex post facto clause forbids the application of any law or rule that *increases* punishment to preexisting criminal conduct. *See* U.S. Const. Art. I, § 9, cl. 3; *cf.* U.S. Const. Art. I, § 10, cl. 1; *Miller v. Florida,* 482 U.S. 423, 429–35, 107 S.Ct. 2446, 2454, 96 L.Ed.2d 351 (1987) (holding that application of revised Florida guidelines law, which increased punishment for crimes in question, to defendant whose crimes occurred before the law's effective date, violated the ex post facto prohibition). At the same time, a special Congressional statute provides that new statutes that *decrease* punishment normally do not affect pending prosecutions. This latter statute says that the

> repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under

such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. Congress enacted this statute expressly to overcome the "law in effect" presumption, as embodied in the "common-law presumption that the repeal of a criminal statute resulted in the abatement of 'all prosecutions which had not reached final disposition in the highest court authorized to review them.'" *Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974) (quoting *Bradley v. United States,* 410 U.S. 605, 607, 93 S.Ct. 1151, 1153, 35 L.Ed.2d 528 (1973)). Of course, this statute itself applies to statutes, not Commission rules. And it applies to substantive changes, not to "procedural" changes. *See, e.g., Marrero,* 417 U.S. at 661, 94 S.Ct. at 2537; *Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916); *United States v. Obermeier,* 186 F.2d 243, 254 (2d Cir.1950), *cert. denied* 340 U.S. 951, 71 S.Ct. 569, 573, 95 L.Ed. 685 (1951); *United States v. Blue Sea Line,* 553 F.2d 445, 448 (5th Cir.1977); *United States v. Mechem,* 509 F.2d 1193, 1194–95 (10th Cir.1975); *United States v. Provenzano,* 423 F.Supp. 662, 669 (S.D.N.Y.1976), *aff'd,* 556 F.2d 562 (2d Cir.1977). Yet, the change at issue here, affecting amount of punishment, would seem more substantive than procedural. And, given the statute, the ex post facto clause, and the absence of contrary authority, we cannot find a "law in effect" presumption at work in the field of *substantive* criminal law.

■ For another thing, the language of the sentencing statute, read literally, prevents us from applying the new amendment on appeal without authorization, express or implied, from the Sentencing Commission (an authorization lacking here). The relevant, complicated, statutory provision says that once a sentence "has been imposed," it must stand, with certain exceptions. Read literally, the words say that once the district court *imposes* the sentence, no one can change it, *unless* the

offender shows some very unusual hardship, or some other statute permits such a change, or a court of appeals finds the sentence was unlawfully imposed, or the Sentencing Commission lowers the guideline and foresees retroactive application of the new one. We have concluded that none of these exceptions fits this case.

The statute reads as follows:

**Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment *once it has been imposed except* that—

(1) in any case—

(A) the court, *upon motion of the Director of the Bureau of Prisons,* may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if it finds that extraordinary and compelling reasons warrant such a reduction* and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; *and*

(B) the court may modify an imposed term of imprisonment *to the extent otherwise expressly permitted by statute or by Rule 35* of the Federal Rules of Criminal Procedure; *and*

(2) *in the case of* a defendant who has been sentenced to *a term of imprisonment based on a sentencing range that has subsequently been lowered* by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c) (emphasis added).

The statute's first exception covers cases of extreme hardship. *See* 18 U.S.C. § 3582(c)(1)(A). It does not apply here. The second exception applies when some other "statute" "expressly" permits modification. *See* 18 U.S.C. § 3582(c)(1)(B). It does not apply here.

The statute's third exception applies when "Rule 35 of the Federal Rules of Criminal Procedure" permits modification. 18 U.S.C. § 3582(c)(1)(B). That Rule says that a district

court shall correct a sentence that is *determined on appeal under 18 U.S.C. 3742 to have been imposed* in violation of law, [or] *to have been imposed* as a result of incorrect application of the sentencing guidelines, ... upon remand of the case to the court....

Fed.R.Crim.P. 35(a). Section 3742 and the related appeal provisions, in relevant part, permit a defendant to appeal, and the appellate court to set aside,

an otherwise final sentence if the sentence—

(1) *was imposed* in violation of law;

(2) *was imposed* as a result of an incorrect application of the sentencing guidelines....

18 U.S.C. § 3742(a); *see* 18 U.S.C. § 3742(e). The sentence before us was not "imposed" in violation of the law, nor was it "imposed" as a result of an incorrect application of the sentencing guidelines. Rather, the sentence, when the court imposed it, was legally correct. *See* 18 U.S.C. §§ 3553(a)(4), 3553(a)(5) (instructing a sentencing court to consider the Sentencing Commission's guidelines and policy statements that are *"in effect on the date the defendant is sentenced"*) (emphasis added).

The fourth exception permits a court to modify a sentence once imposed if the Sentencing Commission later changes the applicable guidelines reducing the term of imprisonment. The court may modify the sentence, however, only if doing so "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Here, the Commission issued a policy statement that, in its terms, expressly forbids retroactive application. Specifically, the Commission produced a list of those amendments for which it intended retroactive application. *See* U.S.S.G. § 1B1.10(d), p.s. It did not include Amendment 266 on this list. It then wrote a policy statement in which it said that, in respect to all amendments which did not appear in the list (such as Amendment 266), "a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c) is not consistent with this policy statement." U.S.S.G. § 1B1.10(a). We recognize that the Commission may not have had cases on appeal in mind when it wrote this statement; the Commission may have focused on the more difficult practical problems that accompany an amendment's retroactive application to those currently serving prison terms—offenders whose convictions may have taken place many years ago. Still, it is difficult, if not impossible, to say that applying Amendment 266 retroactively to cases on appeal would be "consistent" with the absolute language of the Commission's "no retroactivity" policy statement.

Finally, the literal view we have taken makes administrative sense. Consider the set of cases on appeal at the time a "punishment reducing" amendment takes effect. Under the view we have taken, if the Commission says the new amendment should apply retroactively—to all offenders or even only to those with appeals pending—the courts may modify the sentence. Even if the Commission denies retroactivity in general terms (without specifically focusing upon the "cases on appeal" problem), the offender may still be able to take advantage of the new amendment provided the Commission has *promulgated* the amendment before the district court sentences the offender. In such a case, the offender will likely ask the district court to *depart* from the old guidelines to permit him to take advantage of the new guideline, a new guideline that the Commission itself will have conceded better fits his circumstance. Of course, if the Commission has not yet even promulgated an amendment at the time of the offender's sentencing, the offender (like Havener) would likely find it difficult to convince the court to permit him to take advantage of it. Yet, were we to hold, as a matter of law, that an offender such as Havener has a legal right to that advantage (provided the amendment takes effect before the appeal is complete), we should provide offenders with a strong incentive to delay appeals, or to take unnecessary appeals, simply in the hope that some suggested change eventual-

**8**

ly finds embodiment in an amendment that takes effect before the appeal's termination, and we should also leave district courts uncertain about just what guidelines they are to apply.

In sum, the statute's language, considerations of administrative policy, and the quite different background retroactivity assumptions in the area of substantive criminal law lead us to conclude that Havener does not have a legal right to benefit from Amendment 266, which amendment took effect after the district court had "imposed" his otherwise lawful sentence.

### III.

#### Other Arguments

1. Havener argues that the district court should have departed from the Guideline sentence range in light of the "substantial assistance" he provided the government. Specifically, he says that § 5K1.1 of the Sentencing Guidelines provides for such a downward departure. He concedes that that provision, like the statute that underlies it, *see* 18 U.S.C. § 3553(e), becomes operative only "upon motion of the government," and that the government made no such motion here. However, he argues that the precondition—the government motion—is an unlawful precondition. We considered and rejected that argument, and Havener's other, related arguments, in *United States v. La Guardia*, 902 F.2d 1010 (1st Cir.1990), which determines the result here.

█ 2. Havener argues that the government, in failing to make a § 5K1.1 motion, broke the terms of a plea agreement. The fatal problem with this argument, however, is that the government did not promise to make a § 5K1.1 motion. Rather, it said that "at the time of sentencing, the United States will make known to the Court the extent of the cooperation provided by the defendant." The government lived up to this promise. It made "known to the court" the extent of the defendant's "cooperation." The court was free to make use of that information, even without a § 5K1.1 motion, in determining where Havener's sentence should fall between the bottom of the guideline range

(210 months) and the statutory maximum (240 months). Indeed, the court sentenced near, but not at, the bottom of the range, which suggests that it did make use of the information. We can find no legal basis for requiring the government to make a § 5K1.1 motion when it did not promise explicitly (nor does the plea bargaining language promise explicitly) to do so, and no such promise need be implied to make the agreement meaningful. *United States v. Garcia*, 698 F.2d 31, 35–36 (1st Cir.1983), cited by Havener, is not on point, for in *Garcia*, the government said, in return for cooperation, it "may" recommend "probation and fine." Then, after the defendant lived up to his side of the bargain, the government tried to avoid making the recommendation, arguing that the word "may" was not "must." The government here is not relying on a similar argument, for it has done just what it promised with a consequent likely effect upon the appellant's sentence.

For these reasons, the judgment of the district court is

*Affirmed.*