**UNITED STATES of America, Appellee,**

v.

**W. David MARCELLO, Appellant.**

No. 93–7189.

United States Court of Appeals,
Third Circuit.

Argued Oct. 4, 1993.

Decided Jan. 11, 1994.

James R. Protasio (Argued), South Williamsport, PA, for appellant.

Wayne P. Samuelson (Argued), Office of U.S. Atty., Lewisburg, PA, for appellee.

Present: HUTCHINSON, COWEN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant, W. David Marcello ("Marcello"), appeals a judgment and commitment order of the United States District Court for the Middle District of Pennsylvania. Marcello was convicted of structuring bank deposits in order to evade reporting requirements in violation of 31 U.S.C.A. §§ 5322(a), 5324(a)(3) (West Supp.1993). At sentencing, he argued that a downward departure in his sentence was appropriate either because his conduct did not cause the harm or evil which the statute sought to prevent, *see* United States Sentencing Commission, *Guidelines Manual*, § 5K2.11 (Nov. 1992), or because his conduct constituted "aberrant behavior," *see id.* Ch. 1, Pt. A, intro. comment. ¶ 4(d). The district court refused to depart on either ground. It held that it lacked authority to depart downward under section 5K2.11 based upon *United States v. Shirk*, 981 F.2d 1382 (3d Cir. 1992), *petition for cert. filed*, 61 U.S.L.W. 3805 (U.S. May 17, 1993) (No. 92–1841), and that Marcello's conduct did not constitute aberrant behavior under the standard adopted by a majority of the courts of appeals.

While this case was pending on appeal, the applicable guideline on structuring, section 2S1.3, was amended. The amendment, if in place at the time of Marcello's sentencing, would have provided him a chance for more lenient treatment by reducing his offense level from eleven to nine. In such instances, it appears that § 3582(c) of the Sentencing Reform Act, at the very least, gives a district court discretion to resentence a defendant under the later, more lenient version of this Guideline. *See* Sentencing Reform Act of 1984, 18 U.S.C.A. § 3582 (West 1985 & Supp. 1993). We will therefore remand the case to the district court for it to consider whether, under the November 1993 amended version of Guideline section 2S1.3, which became effective while Marcello's appeal was pending, a reduction in Marcello's sentence pursuant to § 3582(c)(2) and Guideline section 1B1.10(d) is warranted.[1]

Because the downward departure issue may still come up on remand, and especially because this Court has not yet defined what

---

**1.** Marcello argues that the case should be remanded to the district court for resentencing because resentencing may make the other sentencing issues moot. As discussed in Part III *infra*, however, the sentencing issues presently before us will not necessarily become moot. Thus, we will address them on the merits.

constitutes "aberrant behavior," we will consider the issues already before us for the guidance of the district court on remand. On those issues, we hold that the district did not err in its interpretation of *Shirk* and that its refusal to depart under section 5K2.11 was therefore not error. On aberrant behavior, the district court adopted the standard set forth by the United States Courts of Appeals for the Fourth, Fifth and Seventh Circuits. According to the district court, Marcello's conduct did not constitute aberrant behavior under this standard because it involved some degree of planning and thought. We believe the correct standard for determining what constitutes aberrant behavior is substantially the same as the one the district court applied.

## I.

Since 1978, Marcello has been an attorney engaged in the practice of law. In 1983, he began representing Elmer Drum ("Drum"), a local businessman, in connection with establishing trusts for his children. In 1986, Marcello also represented Drum in a criminal tax case and continued to represent him through 1992 in an ongoing dispute with the Internal Revenue Service ("IRS") regarding the payment of back taxes and civil penalties.

In November 1990, Marcello began negotiating with Drum for a loan that Marcello's law firm wanted to use as a down payment for the purchase of an office building. Drum agreed to loan the firm $75,000.00 at 8% interest over fifteen years. During December 1990, Marcello received from Drum $75,000.00 in $50 and $100 bills. This money came from a trust fund Drum had established for his son.

Marcello took the loan money and opened a new checking account with a $9,000.00 cash deposit. On the same date, he applied for a safe deposit box. Because the vault which contained the safe deposit boxes was locked for the day, the bank informed Marcello that the vault would not be accessible until the following day. Marcello then asked bank officials to store his attache case containing the currency in the main vault overnight. Bank officials agreed but informed him that they were required to count the currency and

issue Marcello a receipt. The bank counted the currency which totalled in excess of $60,000.00. The next day, December 20, 1990, Marcello returned to the bank, retrieved his attache case, deposited another $9,000.00 into the checking account, and placed the remaining currency in a safe deposit box. On each of five more successive working days, Marcello returned to the bank and deposited $9,000.00 from the safe deposit box into the account. Marcello's cash deposits to the account totalled $63,000.00.

On October 19, 1992, a one-count criminal information filed in the United States District Court for the Middle District of Pennsylvania charged Marcello with structuring bank deposits, totalling $63,000.00, in order to evade reporting requirements in violation of 31 U.S.C.A. §§ 5322(a), 5324(3). Federal law requires that financial institutions file a Form 4789, Currency Transaction Report ("CTR"), for each deposit involving cash in excess of $10,000.00. Marcello admits that he was aware of these reporting requirements at the time he structured the funds and that by structuring the deposits in this manner, he was attempting to prevent the bank from filing the CTRs. No criminal tax evasion charges were brought.

Marcello agreed to plead guilty. At his arraignment on November 3, 1992, he attempted to enter a guilty plea but the district court refused to accept it. The court believed Marcello was not being forthright in explaining his conduct. On November 16, 1992, Marcello again appeared and entered a plea of guilty in accordance with a plea agreement. The district court accepted the plea and ordered a presentence report. Marcello filed objections to eight paragraphs of the report. The district court scheduled a presentence hearing for February 12, 1993, to consider Marcello's objections.

At the pre-sentence hearing, Marcello asserted two bases for a downward departure. First, he argued that under section 5K2.11 of the Sentencing Guidelines his conduct did not cause the harm or evil which 31 U.S.C.A. §§ 5322(a), 5324(3) sought to prevent. Second, he argued that his conduct constituted aberrant behavior.

By opinion and order dated March 2, 1993, the district court overruled Marcello's objections to the presentence report and denied his motion for a downward departure from the Guidelines. It believed it lacked the authority to depart downward under section 5K2.11 based upon our decision in *Shirk*. With respect to Marcello's aberrant behavior argument, the district court rejected the Ninth Circuit's standard for aberrant behavior and instead adopted that used by the Fourth, Fifth and Seventh Circuits. Under this standard, it held that Marcello's conduct did not rise to the level of aberrant behavior.

Thus, Marcello's base offense level was thirteen based on the 1992 version of section 2S1.3 of the Guidelines which was in effect at the time of sentencing. *See* U.S.S.G. § 2S1.3 (Nov. 1992) (providing for base offense level of thirteen "if the defendant: (A) structured transactions to evade reporting requirements"). The district court allowed a two-point reduction for acceptance of responsibility so that Marcello's total offense level was eleven. This resulted in a guideline imprisonment range of eight to fourteen months.

On March 12, 1993, Marcello was sentenced to a term of incarceration of four months and a two year supervised release with the first four months of the supervised release to be served in in-house detention. The court also fined Marcello $2,000.00. He was released on his own recognizance pending appeal.

Marcello filed a timely notice of appeal.

## II.

The district court had subject matter jurisdiction under 18 U.S.C.A. § 3231 (West 1993). We have jurisdiction over the appeal from the district court's judgment and commitment order under 18 U.S.C.A. § 3742 (West 1993) and 28 U.S.C.A. § 1291 (West 1993). We have jurisdiction to review *de novo* the district court's decision not to depart under section 5K2.11 because it believed it did not have the authority to depart. *See*

*United States v. Denardi*, 892 F.2d 269, 271–72 (3d Cir.1989).

We also have jurisdiction to review the district court's adoption of the legal standard from which to judge what constitutes aberrant behavior. The district court stated:

We are of the view that the rationale set forth in the cases from the Seventh, Fifth and Fourth Circuits is the appropriate analysis for determining whether to depart on the basis of aberrant behavior. Using the Ninth Circuit's reasoning, any first time offender may well be entitled to a downward departure based on aberrant behavior. However, this conclusion by the Ninth Circuit ignores other provisions of the Guidelines which take into account a person's prior criminal history. (See U.S.S.G. § 5H1.8). To accept the Ninth Circuit's analysis would result in a double counting of no prior criminal record for a first time offender. As a consequence, the Court would be free to ignore the guideline range in every case of a first time offender. We are of the view that an aberrant behavior finding must be reserved for spontaneous or thoughtless criminal actions.

In the case before the Court we cannot say that the Defendant acted spontaneously or thoughtlessly. There was at least minimal planning in the structuring of the transactions. Under the facts of this case we cannot conclude that Defendant's conduct amounts to "aberrant behavior" entitling him to a downward departure.

Appendix ("App.") at 36–37. Under the standard set forth by the Fourth, Fifth and Seventh Circuits, the district court held that the facts were insufficient to justify a departure. The question of whether the district court adopted the proper standard is a question of law subject to plenary review. *See Shirk*, 981 F.2d at 1394 (we exercise plenary review over legal questions concerning proper application and interpretation of Guidelines).[2] "We apply the clearly erroneous standard to factual determinations underlying the district

---

**2.** Of course, we recognize that once the standard to be used in analyzing claims of aberrant behavior is defined, the district court's determination of whether a particular departure for aberrant behavior is warranted is a discretionary decision over which we would not have jurisdiction. *See Denardi*, 892 F.2d at 272.

court's application of the Guidelines." *Id.* (citations omitted).

## III.

■ Because of the change in the Guidelines while this appeal was pending, we must first consider Marcello's argument that the case should be remanded to the district court for resentencing. After oral argument Marcello filed with us a motion for remand to the district court. The sentencing guideline addressing the structuring of transactions, Guideline section 2S1.3, under which Marcello was sentenced, was amended effective November 1, 1993 and now provides for a lesser base offense level. Marcello argues that pursuant to 18 U.S.C.A. § 3582(c)(2) and Guideline section 1B1.10(d), the Commission made this amendment retroactive. Thus, Marcello seeks a remand to the district court for resentencing arguing that the issues presently on appeal may then become moot.[3]

The statute provides:

**(b) Effect of finality of judgment.—** Notwithstanding the fact that a sentence *to imprisonment can subsequently be—*

(1) modified pursuant to the provisions of subsection (c);

(2) corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or

(3) appealed and modified, if outside the guidelines range, pursuant to the provisions of section 3742;

a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.

**(c) Modification of an imposed term of imprisonment.—**The court may not modify a term of imprisonment *once it has been imposed* except that—

\*    \*    \*    \*    \*    \*

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C.A. § 3582(b), (c)(2) (emphasis added).

Because the amendment in this case is substantive and not a mere clarification, reduction is possible only if the Sentencing Commission provides that the amended section is to have retroactive application. Guideline section 1B1.10 provides, in pertinent part:

**§ 1B1.10.  *Retroactivity   of   Amended Guideline Range* (Policy Statement)**

(a) Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the guidelines listed in subsection (d) below, a reduction in the defendant's term of imprisonment may be considered under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (d) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement.

\*    \*    \*    \*    \*    \*

(d) Amendments covered by this policy statement are listed in Appendix C as follows:  ... *490*[4] ....

U.S.S.G. § 1B1.10, p.s. (emphasis and footnote added). If the amendment relates to a section mentioned in section 1B1.10(d), it is said to have "retroactive" application and the

---

**3.** Ordinarily a defendant must petition the district court for modification of sentence under U.S.S.G. section 1B1.10. *See* 18 U.S.C.A. § 3582(c)(2). Because Marcello raised this sentencing issue on appeal, we see no need to force him to take this additional step. *See United States v. Wales,* 977 F.2d 1323, 1328 n. 3 (9th Cir.1992).

**4.** Amendment 490 changes the applicable sentencing guideline, U.S.S.G. § 2S1.3.

defendant is entitled to a remand for resentencing so that the district court can determine if a reduced sentence is warranted. *See, e.g., United States v. Coohey,* 11 F.3d 97 (8th Cir.1993).

As the Second Circuit stated in *United States v. Rodriguez,* 989 F.2d 583 (2d Cir. 1993), "Congress did not wish appellate courts on direct review to revise a sentence in light of changes made by the Commission after the sentence has been imposed." *Id.* at 587 (quoting *United States v. Colon,* 961 F.2d 41, 46 (2d Cir.1992)). The Second Circuit therefore, in a direct appeal from a judgment of conviction and sentence, analyzed Guideline section 1B1.10 and 18 U.S.C.A. § 3582(c)(2) and held that because the guideline amendment at issue in that case was not one of those the Commission delineated in section 1B1.10(d) to have retroactive effect, the defendant was not entitled to the benefit of the amended guideline. *Id.* at 587–88; *see also Coohey,* 11 F.3d at 100–01 (on direct appeal, remanding to district court for resentencing for it to determine, in its discretion, whether 1993 amendment to U.S.S.G. § 2D1.1(c), specifying method for determining weight of LSD, should apply); *United States v. Wales,* 977 F.2d 1323, 1327–28 (9th Cir.1992) (on direct appeal seeking application of 1991 amendment to U.S.S.G. § 2S1.3, court remanded for resentencing consideration because of discretion to apply amendment in 18 U.S.C.A. § 3582(c)(2)); *United States v. Connell,* 960 F.2d 191, 197 (1st Cir.1992) (on direct appeal, court looked to retroactivity guideline U.S.S.G. § 1B1.10 and discretion in statute and remanded).

In *United States v. Havener,* 905 F.2d 3 (1st Cir.1990), the court of appeals, in reviewing a conviction and sentence on direct appeal, held that it could not apply a new acceptance of responsibility guideline which had taken effect while a direct appeal was pending but after the district court had "imposed" Havener's otherwise lawful sentence. The court relied on the statutory provision which it determined, if read literally, means that

> once the district court *imposes* the sentence, no one can change it, *unless* the offender shows some very unusual hardship, or some other statute permits such a change, or a court of appeals finds the sentence was unlawfully imposed, or the Sentencing Commission lowers the guideline and foresees retroactive application of the new one.

*Id.* at 6 (emphasis in original). Because the sentence, legally correct under the guidelines at the time it was imposed, was not "unlawfully imposed," the court of appeals held that none of the statutory exceptions permitting modification applied. It did so after analyzing 18 U.S.C.A. § 3582(c)(2) and Guideline section 1B1.10(d) and realizing that the Commission did not list the particular amendment before it there in section 1B1.10(d) specifying those amendments which would be "retroactive." In addition, it cited the Commission policy statement that if the amendment is not listed in section 1B1.10(d), "a reduction in the defendant's term of imprisonment under 18 U.S.C.A. § 3582(c) is not consistent with this policy statement." *Id.* (quoting U.S.S.G. § 1B1.10(a)). It then stated:

> We recognize that the Commission may not have had cases on appeal in mind when it wrote this statement [in U.S.S.G. § 1B1.10(a) ]; the Commission may have focused on the more difficult practical problems that accompany an amendment's retroactive application to those currently serving prison terms—offenders whose convictions may have taken place many years ago. Still, it is difficult, if not impossible, to say that applying [the amendment] retroactively to cases on appeal would be "consistent" with the absolute language of the Commission's "no retroactivity" policy statement.... [W]ere we to hold, as a matter of law, that an offender [who is sentenced prior to promulgation of an amendment] has a legal right to that advantage (provided the amendment takes effect before the appeal is complete), we should provide offenders with a strong incentive to delay appeals, or to take unnecessary appeals, simply in the hope that some suggested change eventually finds embodiment in an amendment that takes effect before the appeal's termination, and we should also leave district courts uncertain about just what guidelines they are to apply.

*Id.* at 7–8. Thus, on the language of 18 U.S.C.A. § 3582 and under this case law, the sentence seems to be final for our purposes and, if so, Marcello would not be automatically entitled to a reduced sentence despite the pendency of this appeal. Indeed, he would not be entitled to any modification of his sentence based on revised Guideline section 2S1.3 unless amendments to that section are listed in section 1B1.10(d) and even then only if the district court decides in its sound discretion to apply the more lenient Guideline.

The November 1993 amendment to section 2S1.3 is found at Amendment No. 490 and is one of the amendments expressly delineated in section 1B1.10(d) to have retroactive effect. *See* U.S.S.G. § 1B1.10(d). Thus, the Commission clearly intended amended section 2S1.3 to receive retroactive application.[5]

There remain two questions we must consider: (1) whether any difference in the guideline range and sentence would result under the amended guideline section 2S1.3; and (2) whether the sentencing issues before us on appeal would become moot upon a remand for resentencing.

There is a material difference in Marcello's base offense level under the amended guideline. Amended section 2S1.3 states that the base offense level is to be six, rather than thirteen under the old version, but that the base offense level also includes "the number of offense levels from the table in § 2F1.1 (Fraud and Deceit) corresponding to the value of the funds." U.S.S.G. § 2S1.3 (Nov. 1993). The application note to section 2S1.3 states that " 'value of the funds' means the amount of the funds involved in the structuring or reporting conduct." U.S.S.G. § 2S1.3, n. 1. CTRs like those involved in this case

are expressly covered. *See id.,* comment (backg'd.). Thus, under amended section 2S1.3, Marcello would have a base offense level of eleven (rather than thirteen under the unamended guideline) because he structured in excess of $63,000.00, which falls within section 2F1.1(b)(F) providing a five level increase where more than $40,000.00, but less than $70,000.00, was involved. U.S.S.G. § 2F1.1. Thus, there is a two-point difference in the base offense level under the amended guidelines. The district court also awarded a two-point reduction for acceptance of responsibility so that Marcello's total offense level was eleven; under the amended guidelines his total offense level would have been only nine. According to the sentencing table, this difference in his total offense level would result in a different sentencing zone level. With a total offense level of eleven, as the district court found, Marcello's sentencing range, as a defendant with a Criminal History Category of I, was eight to fourteen months. With a total offense level of nine under the amended guideline, Marcello would have been within the four to ten month range. *See* U.S.S.G. Ch. 5, Pt. A. Because Marcello's total offense level and sentencing range could be materially altered by application of the amended guideline, we will remand for the district court to consider whether in its discretion Marcello's sentence should be reduced under amended section 2S1.3.

Marcello argues, in his Petition for Remand, that a remand for resentencing under amended section 2S1.3 is proper because "[a] resentencing by the District Court may make the current appeal moot." The sentencing issues presently before us, however, will not

---

5. As the Courts of Appeals for the First and Second Circuits have stated, the sentencing court has discretion to decide whether sentences still on appeal should be reduced after considering the factors specified in 18 U.S.C.A. § 3553(a) and U.S.S.G. § 1B1.10(b), (c). *See* 18 U.S.C.A. § 3582(c)(2) (West Supp.1993) ("the court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission") (emphasis added); U.S.S.G. § 1B1.10(b) ("court should consider the sentence that it would have originally imposed had the guidelines, *as amend-*

*ed,* been in effect at that time"); *id.* § 1B1.10(c) ("reduction in a defendant's term of imprisonment may, in no event, exceed the number of months by which the maximum of the guideline range applicable to the defendant ... has been lowered"). We see no reason on this record why the district court would refuse retroactive application but the statute, guidelines, and cases on the subject in the other courts of appeals that have considered the question indicate the issue of reduction is one for the district court in its discretion in the first instance. Therefore, we need not reach or decide whether a more lenient Guideline must be applied to cases still on appeal.

necessarily become moot. Even if Marcello receives a reduction in sentence because of application of the amended guideline, he could still argue for a downward departure under either section 5K2.11 or the aberrant behavior provision. Thus, we will address these issues for the benefit of the district court because we would most likely still have to address them after remand.

### IV.

#### A. *Downward Departure under U.S.S.G. § 5K2.11*

■ We consider this issue for the benefit of the district court in the event that it arises on remand. Marcello argues that downward departure was warranted under section 5K2.11 because his conduct did not cause or threaten the harm that the statute proscribing structuring transactions sought to prevent. Section 5K2.11 provides, in pertinent part:

§ 5K2.11. **Lesser Harms** (Policy Statement)

\*   \*   \*   \*   \*   \*

In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

U.S.S.G. § 5K2.11.

Under 31 U.S.C.A. § 5324(a)(3), "[n]o person shall for the purpose of evading the reporting requirements of section 5313(a) ... structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C.A. § 5324(a)(3). In defining "structure" the regulations provide:

a person structures a transaction if that person ... conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the

reporting requirements.... "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 103.11(p) (1992). The district court properly determined that the harm or evil the statute seeks to prevent is the laundering of illegal money and the hiding from the government of money that could be taxable. It then found that these harms were not present here because the funds Marcello deposited were admittedly not subject to tax and were legitimately derived. However, on the basis of our opinion in *Shirk*, 981 F.2d at 1394–96, the district court stated that while it desired to depart it did not think it had authority to do so.

In *Shirk*, the defendant was convicted of willfully structuring currency transactions in violation of the same statutory sections involved in the instant case. *Id.* at 1384. Shirk was acquitted of all tax counts. He had operated a nationwide wholesale firearm distributorship. *Id.* at 1385. The bank had granted him a $20,000.00 exemption from the CTRs so that he could deposit up to this amount without triggering a report. After the bank revoked this exemption, Shirk began intentionally depositing, in eighty-eight separate transactions over a one year period of time, amounts under $10,000.00 to avoid the CTRs. *Id.* at 1385–86.

At Shirk's sentencing, the district court departed downward under section 5K2.0 which authorizes departure where there is an aggravating or mitigating circumstance not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. *Id.* at 1396. The district court found that Shirk's conduct was "atypical" because he had been acquitted on criminal tax charges, he only structured legitimate business proceeds into his own legitimate

bank accounts, he may not have realized structuring was a criminal act, and he was subject to a substantial forfeiture. *Id.* This Court, however, reversed that decision holding that the factors the district court relied upon were adequately taken into consideration by the Sentencing Commission and were not valid departure grounds under section 5K2.0. *Id.* We stated that:

> Because Shirk structured transactions to evade the reporting requirements, the commentary unambiguously requires that he receive base level thirteen. It makes no difference whether his structuring was in some sense "technical" [*i.e.*, with no unlawful objective] or whether his structured funds were "legitimate."

*Id.* at 1395 (footnote omitted). The arguments Marcello presents are similar to the arguments that we rejected in *Shirk.* We noted in *Shirk* "[t]he evidence established that, for almost a year, Shirk engaged in an ongoing plan to structure currency transactions involving more than $600,000.00 for the specific purposes of evading federal reporting requirements...." *Id.* at 1395 n. 12. Thus, Shirk's structuring was not "technical" in any event. Marcello's conduct, like Shirk's, also involved planning with an intent to prevent the filing of CTRs. The only differences between *Shirk* and the instant case are that *Shirk* involved departure under section 5K2.0 for a defendant who was charged (although acquitted) with tax evasion, while this case involves departure under section 5K2.11 for a defendant who was charged only with structuring itself, not tax evasion. Apparently, Marcello's currency was not subject to tax and was legally obtained. These differences, however, are insufficient to distinguish *Shirk* and that case therefore controls.

Marcello admittedly structured the transactions to evade reporting requirements and his conduct falls squarely within that conduct prohibited by statute. The Commission provides examples of when such a departure under section 5K2.11 is appropriate such as, "where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program." U.S.S.G. § 5K2.11. Marcello's conduct is materially different than these examples and does not warrant a departure.

Therefore, the district court correctly applied *Shirk* and did not err in holding that it lacked authority to depart downward under section 5K2.11.

### B. *Downward Departure for Aberrant Behavior*

■ We also consider the issue of aberrant behavior, one of first impression in this Court, for the guidance of the district court in the event it arises on remand. Marcello also argues that his conduct constituted "aberrant behavior" under the Guidelines justifying a downward departure. The introductory section to the Guidelines Manual provides in part as follows:

> The Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures.

U.S.S.G. Ch. 1, Pt. A, intro. comment. ¶ 4(d). Although this Court has not yet considered this language, other courts of appeals have. Only the Courts of Appeals for the Ninth and First Circuits have used aberrant behavior as a basis for a downward departure, with the United States Court of Appeals for the Ninth Circuit adopting a rather expansive view of what may constitute aberrant behavior by considering whether the defendant is a first-time offender. *See, e.g., United States v. Fairless,* 975 F.2d 664, 668 (9th Cir.1992); *United States v. Takai,* 941 F.2d 738, 743 (9th Cir.1991); *United States v. Russell,* 870 F.2d 18, 19–20 (1st Cir.1989). The Courts of Appeals for the Fourth, Fifth and Seventh Circuits have noted the possibility of an aberrant behavior departure; however, they have rejected the Ninth Circuit's expansive view and refused to find aberrant behavior on the facts of the cases before them. *See, e.g., United States v. Andruska,* 964 F.2d 640, 644–46 (7th Cir.1992); *United States v. Carey,* 895 F.2d 318, 324–25 (7th Cir.1990); *see also United States v. Williams,* 974 F.2d 25, 26–27 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1320, 122 L.Ed.2d 706 (1993); *United States v. Glick,* 946 F.2d 335, 338 (4th Cir.1991).

The majority of the courts of appeals have decided that aberrant behavior is a spontaneous single act that is unplanned. In *Carey,* the Seventh Circuit stated that:

> While the Guidelines provide no guidance as to what constitutes a single act of aberrant behavior, we believe that it must be more than merely something "out of character" or the defendant's first offense. Carey's otherwise exemplary life before becoming involved in this check-kiting scheme does not render his actions, on their own, a single act of aberrant behavior to support a departure. Instead, we believe that there must be some element of abnormal or exceptional behavior. Carey's actions were apparently the result of extensive planning and were spread out over a fifteen-month period. *A single act of aberrant behavior, however, generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning* because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable.

*Carey,* 895 F.2d at 325 (emphasis added); *see also Williams,* 974 F.2d at 26 (" 'aberrant behavior' ... requires more than an act which is merely a first offense or 'out of character' for the defendant"; under *Carey,* requires spontaneity and thoughtlessness); *Glick,* 946 F.2d at 338 (same). Under the Seventh Circuit's view, the act must be "spontaneous and seemingly thoughtless." *Carey,* 895 F.2d at 325. The district court adopted this majority view reasoning that the Ninth Circuit's view, which looks to lack of prior convictions, improperly allowed any first-time offender to receive an aberrant behavior departure even though the Guidelines already adequately considers criminal history in the sentencing formula. *See Takai,* 941 F.2d at 738 (conduct of two defendants who had conspired and bribed immigration official in attempt to obtain green cards for friends over six week period constituted aberrant behavior given absence of prior convictions).

The standard the district court adopted is the correct standard to apply in such a case.

Aberrant behavior must involve a lack of planning; it must be a single act that is spontaneous and thoughtless, and no consideration is given to whether the defendant is a first-time offender. Therefore, the district court did not err in adopting the standard as set forth by the majority of the courts of appeals which requires that the conduct be "seemingly thoughtless and spontaneous." *See Carey,* 895 F.2d at 325.

■ The district court correctly applied this standard and found that some pre-planning was required to deposit $9,000.00 each day over a one-week period of time. Thus, our review extends no further, as any decision on the part of the district court not to depart, after applying the correct legal standard, is discretionary and unreviewable. *See Denardi,* 892 F.2d at 272.

## V.

Based on *Shirk,* the district court properly determined that it had no authority to depart under Guideline section 5K2.11. Furthermore, the district court adopted the correct standard of what constitutes aberrant behavior and we will not review its discretionary determination that Marcello's conduct did not constitute aberrant behavior because it was not spontaneous and thoughtless, but rather required some degree of planning. Therefore, we will affirm the order of the district court in these respects. We will, however, remand to the district court for it to consider whether in applying the November 1993 amended Guideline section 2S1.3 a reduction in Marcello's sentence, pursuant to 18 U.S.C.A. § 3582(c)(2) and Guideline section 1B1.10(d), is warranted.