**UNITED STATES of America**

v.

**Amielia BOOE**

**No. 1:02–CR–135.**

United States District Court,
E.D. Tennessee
at Chattanooga.

March 19, 2003.

LaFonda Jones, Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, for Amielia N Booe (1), defendant.

Steven S Neff, U S Department of Justice, Office of U S Attorney, for U.S. Attorneys.

### *MEMORANDUM*

COLLIER, District Judge.

This matter came before the Court for a sentencing hearing on February 7, 2003. At the hearing Defendant Amielia Booe ("Booe") moved the Court for a downward departure from the applicable sentencing guidelines for her offense of conviction based upon the argument her conduct in committing this crime constituted "aberrant behavior" on her part. The Government objected to the departure on the basis Booe planned the bank robbery and therefore did not meet the definition of aberrant behavior listed in the guidelines. After considering the relevant guidelines and the unusual circumstances presented in this case, the Court concluded a substantial departure was warranted and granted Booe's motion.

The Court has prepared this Memorandum to explain the reasoning behind its decision.

### I. *RELEVANT FACTS*

The relevant facts of Booe's offense were set out in the presentence report and stated by Booe's counsel at the sentencing hearing. When asked whether he took issue with any of the stated facts, the Assistant United States Attorney representing the Government indicated he did not. Since the relevant facts are not disputed, the Court summarizes them below.

On August 28, 2002, in the middle of the afternoon, Booe robbed a bank with a threatening note. She left the bank, walked across the parking lot, got into her Ford Explorer and drove away. The branch manager of the bank followed Booe outside and wrote down her license plate number as she drove away. Thirty minutes later she was stopped by police officers and arrested for the robbery. After being incarcerated for a short time, she confessed to the entire crime.

Earlier that morning Booe had dropped off her son at his grandmother's house and instead of going to work, returned home to her apartment. According to Booe, she became overwhelmed by her situation. She was a single mother with a one-year-old child and another child on the way. She had been suffering from severe depression experiencing poor appetite, crying spells and intense guilt over her child's well being. This guilt translated into almost an obsession with the welfare of the baby and Booe would check on him every few hours causing her to suffer from sleep deprivation.

In addition to these psychological and physical stressors, Booe was also under financial pressure. She had attempted to solve her financial problems and had been unsuccessful in getting assistance from

several financial institutions. It was under this backdrop of circumstances, she decided to rob a bank later that afternoon.

## II. DISCUSSION

■ After hearing the arguments of counsel for both sides, the Court determined a substantial departure was appropriate in this case. When a district court departs from the guidelines, it is required to explain both the reasons compelling the decision to depart and the extent of the departure. *United States v. Barajas–Nunez,* 91 F.3d 826 (6th Cir.1996).

### A. Reasons for the Departure

■ Booe moved the Court to grant her a downward departure from the applicable guidelines for her offense of conviction based upon her argument her conduct in committing this crime constituted "aberrant behavior" on her part. Soon after the effective date of the sentencing guidelines, courts confronted situations in which a defendant's conduct was considered "aberrant behavior" in that the defendant's conduct deviated from the usual or natural type of conduct engaged in by the individual. Implicit in the creation and structure of the guidelines was the ability of courts to fashion sentences appropriate to the circumstances before the particular judge and to refine and develop the guidelines regime. *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 2053, 135 L.Ed.2d 392 (1996). In some ways this makes the guidelines regime a living breathing organism constantly adapting to new situations and capable of growth. Properly understood, the Guidelines provide for taking into account the peculiarities of particular situations and gives judges the freedom to fashion appropriate and just sentences. This is healthy for our society and is a strength of the guidelines system.

Inherent in this living, breathing process are growing pains. With regard to departures for aberrant behavior some conflicts arose among the courts regarding the contours of such a departure. *See United States v. Grandmaison,* 77 F.3d 555 (1st Cir.1996) (allowing departures based upon aberrant behavior under a "totality of the circumstances test" even when more than one act involved); *United States v. Marcello,* 13 F.3d 752 (3d Cir.1994) (holding aberrant behavior departure requires thoughtless, spontaneous single act). In 2000, to resolve the conflicts, the drafters of the sentencing guidelines added a new section for the first time recognizing aberrant behavior was a proper basis for a downward departure and detailing when it would be appropriate for a district court to depart on that basis. This new guideline provision states "[a] sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." United States Sentencing Commission, *Guidelines Manual,* § 5K2.20 (Nov.2002).

This policy statement is an authoritative guide for the Court as to factors to consider in deciding whether to depart from the guideline range. *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). Section 5K2.20 of the guidelines defines aberrant behavior as "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." USSG § 5K2.20, comment. (n. 1). From the facts stated in the Presentence Report and the uncontradicted assertions of counsel at the sentencing hearing, it is clear Booe met all three parts of this definition.

First, the crime was done without significant planning. Booe dropped off her child at his grandmother's house, went home to her apartment and became overwhelmed

by her situation. It was at that point she decided to rob the bank. While the Government contends otherwise, the robbery itself is indicative of lack of planning. Booe did not prepare any disguise or do anything to make identifying her as the robber more difficult. She used her own vehicle. In fact she walked across the street and got in her car allowing a bank employee to watch her walk away and follow her to her vehicle. The vehicle was parked in such a way the employee was able to see and record the license plate number. From the Presentence report it appears Booe is an intelligent individual who with carefully planning would have committed the robbery in such a manner as to provide greater prospects of success.

Second, the crime itself was of limited duration. From all indications the time from when Booe first decided to commit the robbery until Booe robbed the bank was a very short time. The time from the decision to execution would only have been a few hours at most. The robbery itself took only a few minutes and Booe was arrested just a short time later.

Finally, this act marks a deviation from Booe's otherwise law abiding life. Patterns can be discerned in a person's life. Prior to the bank robbery Booe had not committed another crime. She had never been arrested. In fact there is no evidence she had even had so much as a ticket for jaywalking. Certainly, her bank robbery was a marked deviation from her otherwise law-abiding life.

In addition to meeting this three pronged definition, Booe had to meet certain concrete requirements in order to be eligible for the departure. Her offense could not have involved serious bodily injury or death and could not have been a serious drug trafficking offense. She could not have discharged a firearm or otherwise used a firearm or a dangerous weapon. Finally, she could not have more than one criminal history point or even a prior felony conviction regardless of whether it could be counted under the guidelines. USSG § 5K2.20. Booe clearly met all of these conditions.

Even though Booe met all of these requirements and the Court found her behavior was aberrant, she still had to show how her case was "extraordinary." *United States v. Castano–Vasquez,* 266 F.3d 228, 235 (3d Cir.2001). It is not clear from the guidelines what "extraordinary" means in this context. It could mean when considering the case as a whole there is something about the case that takes it out of the heartland of the guidelines pursuant to *Koon.* Another possibility is because the case is already unusual due to Booe's aberrant behavior, "extraordinary" has its own unique definition pursuant to this section. For instance, it could mean the case is not typical for the type of aberrant behavior cases that come before the Court. The guidelines do not define what constitutes an extraordinary case for this section, although it does provide certain non exhaustive factors the Court may consider in making this determination. USSG § 5K2.20, comment. (n. 2); *United States v. Rivera–Rodriguez,* 318 F.3d 268, 275 (1st Cir.2003); *Castano–Vasquez,* 266 F.3d at 235. These factors include the defendant's "(A) mental and emotional condition; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." USSG § 5K2.20, comment. (n. 2). Nothing in the application note either requires the Court to consider these factors or intimates the list is exhaustive. *Castano–Vasquez,* 266 F.3d at 235. However, the Court does believe they provided a sound starting point for analyzing the issue.

First, the Court noted Booe's mental and emotional condition clearly played a

significant role in her actions. She had recently had a baby and was suffering from severe depression. Her counsel stated she suffered from postpartum depression. She became overly obsessed with the welfare of her baby and began losing sleep. She experienced poor appetite, crying spells, and intense guilt over her child's well being. She had recently discovered she was pregnant again. She was also facing extreme financial pressure.

Next, the Court decided Booe's work history showed someone who was determined to find employment even if she had a hard time keeping it. From the letters submitted to the Court it appeared her coworkers and supervisor felt she performed a good job and was a stable employee.

While the other factors listed in the application note did not apply to Booe, as stated earlier, it is clear these factors are not exhaustive and are not requirements for the application of this guideline. Moreover, none of these three factors militate against her. Accordingly, the Court considered several other factors it believed made this case extraordinary.

First, from the letters received by the Court from Booe's coworkers and family members it appeared she was someone people believed could make a positive contribution to society. According to the people who had spent a great deal of time with Booe, she was an honest and hardworking person who acts responsibly. The Court found her responsibility was also demonstrated by the fact she had always provided for her child and planned to marry the father of the child in the near future.

Second, Booe was quite distinct from other bank robbers that normally come before the Court. Booe was not particularly violent or vicious in her crime. This is not to say the bank robbery itself was out of the heartland, but rather Booe was out of the heartland of typical defendants who commit this type of crime.

Booe was also unusual because she came from a good family and had such a stable background. Most of her family attended her sentencing and offered their support. Booe had accepted societal norms. She did not have a substance abuse problem either with drugs or alcohol.

Finally, Booe's criminal record was extraordinary. While certain defendants have come before the Court with the same criminal history category as Booe, they almost always have had at least an arrest or minor conviction. Booe, on the other hand, had a spotless record criminal record.

While the Court may have seen some of the above listed factors in a case where the defendant's behavior could be considered aberrant, it rarely, if ever, had seen all of these factors at the same time and in the same degree. Because Booe met all the criteria set out in § 5K2.20, and was out of the heartland, the Court granted her motion for a downward departure.

## B.   Extent of Departure

After determining a departure was appropriate, the Court looked to the question of the extent of the departure. In deciding how far the Court should depart, it turned to the purposes of punishment as set out by Congress in 18 U.S.C. § 3553 as well as the traditionally understood purposes of criminal punishment. In § 3553 Congress listed several factors to be considered when determining the need for the particular sentence imposed. These include the need:

(a) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant;  and

(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The Court determined deterrence of Booe and the protection of society from further crimes of Booe were not necessary goals. However, it concluded a sentence that reflected the seriousness of the offense, promoted respect for the law, and provided just punishment for the offense were still appropriate considerations. Providing Booe with needed correctional treatment was also an appropriate consideration.

Taking all of the factors into consideration and the peculiar circumstances of Booe, the Court made a substantial departure downward. The Court believed the purposes of punishment could be adequately served by a downward departure of nine levels from Booe's offense level placing her in offense level 12. With a criminal history category of one that placed her in a guideline range of 10–16 months imprisonment. The Court sentenced Booe to the middle of that range, i.e., twelve months incarceration with half of that sentence being served on home detention.

## IV. CONCLUSION

After considering the relevant guidelines and the unusual circumstances presented in this case, the Court concluded a substantial departure was warranted and granted Booe's motion. Using the factors listed in 18 U.S.C. § 3553 the Court then determined a nine level departure was appropriate.

**An Order has entered.**